UNITED STATES of America, Plaintiff,

v.

Elizabeth BUCKHANAN, Defendant.

No. 4:CR95–3053.

United States District Court,
D. Nebraska.

May 26, 1995.

---

Fredilyn Sison, Federal Public Defender's Office, Omaha, NE, Robert R. Nigh, Jr., Federal Public Defender's Office, Lincoln, NE, for defendant.

Janice M. Lipovsky, Lancaster County Attorney, Lincoln, NE, for U.S.

## MEMORANDUM AND ORDER ON MOTION TO SUPPRESS

URBOM, Senior District Judge.

On April 12, 1995, by filing 26, Magistrate Judge David L. Piester recommended that the defendant's motion to suppress be denied. The defendant has objected and has asked that the court conduct a de novo review. I have done so by studying the defendant's corrected brief, the complete transcript of the suppression hearing of March 27, 1995, and the exhibits considered at that hearing.

The defendant does not challenge the magistrate judge's findings of fact, except as follows:

"Counsel does not recall Office [sic] Gambrel [sic] testifying that the search was conducted without reliance upon the warrant but instead based upon the proximity of the crack cocaine under the seat cushion. Counsel admits that the Magistrate may be right concerning this testimony, but simply ask [sic] that the Court rely upon the transcript of the hearing to make this determination."

Officer Gambrell at page 109 of the transcript testified:

"It was my understanding when I was told to search the purse that it was, it was Ms. Buckhanan's purse. And, again, I did find identification inside stating it was hers, you know, but was I searching—I was searching it because we'd already found crack in her general area, and also because the search warrant allowed us to."

The defendant also questions the magistrate judge's finding in footnote 6 that the bag of crack cocaine underneath the cushion the defendant had been sitting on was within two or three inches of the armrest. That finding is well supported by the evidence. Two of the officers concluded that it was two or three inches from the armrest; one said it was six to twelve inches from the armrest. The magistrate judge was correct in arriving at the two-or-three-inch determination.

I agree with the magistrate judge's conclusion that the defendant's attempt to conceal a bag of crack under her cushion provided the officers "particularized probable cause to suspect that additional crack or narcotics evidence might be present in her purse, which she identified as hers prior to the search of it. The existence of such particularized probable cause supported the search of de-

fendant's person and her purse." It also is true that after the cocaine was found under the cushion of the couch, a search of the purse was justified as an incident to a lawful warrantless arrest. This is true, even though the arrest apparently occurred after the search of the purse. Such a search need not be limited to a search for cocaine; it is entirely appropriate for such a search to be for the purpose of discovering weapons. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) ("there is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean that area from within which he might gain possession of a weapon or destructible evidence.")

I adopt the findings of fact and the conclusions of law stated in the magistrate judge's report and recommendation, filing 26.

IT IS ORDERED that the motion to suppress, filing 8, is denied.

## REPORT and RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is Defendant Buckhanan's motion to suppress. (Filing 8.) For the reasons discussed more fully below, I shall recommend that the motion be denied.

On December 13, 1994 defendant was indicted on one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant has filed a motion to suppress all evidence obtained from a search of her purse October 12, 1994. (*See* filing 8.) On March 27, 1995 the court held a hearing on the motion. The government called three witnesses: Gregory Sorensen, Geoffrey Marti and Kem Gambrell. Defendant called one witness: Cindi Arthur.

## FACTS

On October 12, 1994 members of the Lincoln Police Department's ("LPD") Special Weapons and Tactics ("SWAT") team, along with other officers in the department, executed a no-knock search warrant on 2412 "W" Street #11 in Lincoln.[1] The unrestricted warrant (plaintiff's exh. 2), signed the same day as the search, specified a search for controlled substances including crack cocaine; drug paraphernalia such as scales, plastics bags, film canisters, etc.; documentary evidence relating to the source and/or customers of controlled substances; any proceeds directly attributable to the sale of controlled substances and any evidence of occupancy. (*See id.*)

LPD SWAT team member Sergeant Gregory Sorensen was the third of ten officers through the door on the October 12, 1994 warrant search. As Sorensen entered the apartment he saw several females sitting in the living room area, including defendant, who was seated on the west end of the couch near the north wall of the apartment. (*See* plaintiff's exh. 1.) Per his assignment, Sorensen quickly moved through the living room area and continued down the hallway south towards the bathroom and bedrooms to secure those areas.[2]

LPD SWAT team member Geoffrey Marti, who was either the fourth or fifth officer through the door, testified that although the officers' search plan was flexible, he was to secure the living room area. When Marti entered the living room area he saw defendant and two others seated on the couch nearest the apartment door; defendant was seated on the end of the couch nearest the door (the west end). Marti told the individuals in the living room "police search warrant, don't move," further instructing them to sit still and place their hands on their laps where Marti could see them. While Marti remained in the living room area his attention focused on both the three individuals on

---

1. LPD narcotics investigators including Kem Gambrell and Cindi Arthur arrived at the scene a short time thereafter.

2. Sorensen testified that he and the first two officers into the apartment were to secure the bathroom and bedroom areas, since the bath-

room offered the opportunity to destroy any narcotics by flushing them down the toilet. Sorensen first checked the east bedroom, where he found no one, then stepped back out into the hall to assist in securing a female near the bathroom and another female in the west bedroom.

the north couch and the other activity going on in the apartment. At one point, however, Marti noticed that defendant's right hand was not on her lap but was hidden down the side of the couch between the armrest and the cushion on which she was seated. Marti testified that defendant's arm was about parallel with her waist and was stuffed down between the cushion and the armrest about halfway between the back and the front edge of the couch. Marti told defendant to bring her hand back up where he could see it, and she did so. Marti continued to monitor the living room area for about five minutes until officers were able to begin searching the individuals on the north couch.

By this time Sergeant Sorensen had completed securing and searching the bedroom and bathroom areas of the apartment and had joined Marti and Gambrell in the living room area. Sorensen testified that while watching the individuals on the north couch he found a brown prescription drug bottle on the floor near the southwest corner of the living room where defendant was seated (indicated by the circled "XX" on plaintiff's exh. 1.) The name had been scraped off, but the label on the bottle bore the drug name "dazapine." Sorensen picked up the bottle, inspected it, and found 8–10 rocks of what appeared to be crack cocaine. Sorensen handed the bottle to LPD narcotics investigator Cindi Arthur, who was assisting in the search of the three individuals on the couch. Neither Marti nor LPD narcotics investigator Kem Gambrell (who was also assisting in the search of the three individuals on the couch) recalled seeing any such bottle, and Arthur was not asked about receiving it from Sorensen. Sorensen did not see defendant do anything with her hands such as reaching towards the area where the bottle was found, and he did not ask defendant about the bottle when he found it.

Meanwhile, Marti, Gambrell and Arthur began to search the individuals seated on the north couch, including defendant. When Marti lifted the cushion defendant had been seated on, he saw a wadded-up, clear plastic baggie containing a white substance later determined to be crack cocaine a few inches

from the armrest and about halfway towards the back of the couch. Gambrell, who recalled the baggie being six to twelve inches from the armrest under the cushion, reached down and picked up the baggie. Sorensen, who was still in the living room observing, testified that he saw the baggie about one or two inches away from the armrest, and approximately two inches from the front of the couch. Arthur did not see the position of the baggie under the cushion. No other items (contraband or otherwise) were found under the cushions. Marti testified that he told Gambrell that he had seen defendant reaching down the side of the couch earlier, and Gambrell believed she heard Marti say something to that effect. Sorensen testified that he heard Marti say something to defendant about stuffing something down the side of the couch, but he did not recall whether Marti or Gambrell questioned defendant about it. Arthur testified that she performed a pat-down search on defendant and that no contraband was found. A strip-search was later performed on defendant and no contraband was found.

Arthur further testified that she saw some purses on the floor near the north couch. Arthur asked defendant if a purse located near defendant's feet was hers, and defendant replied that it was. Gambrell testified that the purse was very close to and about 45 degrees angled from defendant's feet. (See plaintiff's exh. 1, marked with the "P" within a square near the north couch.) Arthur and Gambrell were unsure whether the purse had been moved by any officers during the initial stages of the search. Sorensen did not recall the location of any purse in the living room. Gambrell, who was aware that defendant had told officers that the purse was hers, searched the purse and found defendant's identification inside it. Gambrell also found a plastic baggie of crack cocaine inside a cigarette case, a safety pin with what appeared to be crack residue on it, $325 in cash and five prescription pills.[3] Gambrell did not recall speaking with defendant about whether any of the items within the purse were hers. Gambrell believed that her search was proper both under the search warrant and in

3. The five pills were later identified as Ritalin.

light of the baggie of crack found under the cushion.

## DISCUSSION

The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. IV. As aptly recognized by Justice Jackson:

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948).

■ Plaintiff first argues that defendant lacks standing to contest the search. (*See* Brief in Opposition, at 3.) Since Fourth Amendment rights are personal, an individual challenging a search must show personal standing, i.e. a legitimate expectation of privacy in the area or item searched. *United States v. Kiser,* 948 F.2d 418, 423 (8th Cir. 1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423 n. 1, 58 L.Ed.2d 387 (1978)). To establish a legitimate expectation of privacy a defendant bears the burden of demonstrating (1) a subjective expectation of privacy; and (2) that that subjective expectation is one that society is prepared to recognize as objectively reasonable. *See id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)); *see also Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■ Defendant did not address the standing issue directly either at the suppression hearing or in her brief. That is, defendant has not explained why she had a subjective expectation of privacy in the purse at the time it was searched, much less that that expectation is objectively reasonable. Nevertheless, it appears defendant had a legitimate expectation of privacy in the purse. Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *United States v. Gomez,* 16 F.3d 254, 256 (8th Cir.1994) (citing *United States v. Sanchez,* 943 F.2d 110, 113 (1st Cir.1991)). Here, defendant's purse was close enough to her to suggest meaningful possession and/or control and defendant told officers that she owned it contemporaneous with the search. As such, the record reveals a sufficiently close connection between defendant and her purse to confer standing.

■ Defendant argues that the search of her purse violated the Fourth Amendment because it was beyond the scope of the search warrant and not supported by probable cause. (*See* Brief in Support, at 3.) Since plaintiff has not established that any exigent circumstances or consent accompanied the search of defendant's purse, a warrant was required to search it. *See, e.g., United States v. Johnson,* 12 F.3d 760, 764 (8th Cir.1993), *reh denied* (# 92–3777) (Feb. 4, 1994), *reh. & suggestion for reh. en banc denied,* (Feb. 23, 1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2689, 129 L.Ed.2d 821 (1994).

■ A warrant such as the one here authorizing a search for cocaine ordinarily authorizes officers "to search every nook and cranny of the house, including any container in which such a small amount of cocaine could be found...." *United States v.*

*Wayne,* 903 F.2d 1188, 1196 (8th Cir.1990) (quoting with approval the district court denial of defendant's motion to suppress), *reh denied* (July 6, 1990)). The item searched here, however, is not a container logically connected with the apartment, but rather an individual's purse whose ownership and possession was known to the searchers at the time it was searched. While this would not ordinarily be a problem where the individual is an owner, renter or long-term occupant of the premises, special privacy concerns arise where the individual is a visitor. *See Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Hummel–Jones v. Strope,* 25 F.3d 647, 651 (8th Cir.1994), *reh and suggestion for reh en banc denied* (July 28, 1994).

 In such a situation, the Fourth Amendment shields the bystander· or visitor from being searched merely for physical proximity to criminal activity. *See Ybarra,* 444 U.S. at 91, 100 S.Ct. at 342. Only where the facts show that a relationship between the visitor and the place exists such that it is reasonable for the searchers to believe that the warrant overcomes the visitor's independent Fourth Amendment privacy rights may a visitor be searched. *Hummel–Jones,* 25 F.3d at 651. Thus, "absent exigent circumstances or some basis for suspicion which overcomes the visitor's privacy rights, searches of briefcases, luggage, or other personal containers belonging to visitors to the physical area to be searched are unreasonable." *Id.* at 652 (citing *United States v. Robertson,* 833 F.2d 777, 785 (9th Cir.1987)).

Here, defendant has made no effort whatsoever to establish the nature of her presence inside 2412 "W" Street # 11 on October 12, 1994. Although defendant alleges that she just "happened to be in the apartment" at the time (Brief in Support, at 4), there is no evidence in the record establishing whether she was a renter, roommate, visitor or vagrant. Even assuming, *arguendo,* that defendant should be treated as a visitor, the facts here show that there was a reasonable basis for suspicion which overcame any privacy interest defendant had in her purse when it was searched.

 This is not a situation where a valid warrant was issued for a private premises and defendant just "happened by" as a patron or casual visitor when the warrant was executed. *Compare Ybarra, supra* (bar patron searched in connection with investigation of bartender's alleged sale of heroin); *Hummel–Jones, supra* (couple patronizing birthing clinic at 2:00 a.m. detained and searched in connection with investigation of clinic for practicing medicine without a license).[4] Here, the warrant made no mention of defendant or any other specific individual, even though the accompanying affidavit relied primarily on informant information concerning one Kenneth Hawthrone, who had been observed making a narcotics transaction at 2412 "W" Street # 11 within hours of the warrant being signed. (*See* Plaintiff's Exh. 2, "Affidavit for a Search Warrant," at 2.) The affidavit also identified "at least two other individuals" inside 2412 "W" Street # 11 who were in possession of crack with Hawthrone, and those individuals were not described. The warrant here was for searching a residence that was believed to be "frequented" (not necessarily owned or rented) by Hawthrone for the purpose of short term narcotics trafficking. (*See id.* at 1.) The affidavit further explained that

> based upon the system of sale and delivery demonstrated by individuals delivering crack/cocaine, it is likely that every person inside the residence may be in possession of crack/cocaine, money from the distribution of crack cocaine or paraphernalia used for the ingesting of crack cocaine. Affiant believes there is reasonable cause to believe that every individual found inside the

---

4. For example, the warrant at issue in *Ybarra* specifically authorized a personal search of "Greg," the bartender alleged to be selling heroin on the premises. In a footnote, the Court noted that

> [h]ad the issuing judge intended that the warrant would or could authorize a search of every person found within the tavern, he would

hardly have specifically authorized the search of 'Greg' alone. 'Greg' was an employee of the tavern, and the complaint upon which the search warrant was issued gave every indication that he would be present at the tavern on [the date of the search].

*Ybarra,* 444 U.S. at 90 n. 2, 100 S.Ct. at 341 n. 2.

premises should be searched and the probable cause does exist for the search of each individual found therein.

(*Id.* at 2.) The resulting unrestricted warrant specified no individuals but focused solely on the presence of narcotics and items commonly associated with narcotics; it did, however, "incorporate" the affidavit.[5]

Defendant was present in an apartment out of which short term narcotics trafficking was occurring "at all hours of the day and night." (*See* Plaintiff's Exh. 2, "Affidavit for a Search Warrant," at 1.) Defendant was seated at the west end of the north couch of that apartment when officers entered the apartment and she remained there during the entire search. After being instructed to stay still and keep her hands on her lap she was spotted reaching down the side of the couch. A bag of crack cocaine was found a few moments later underneath the cushion she had been sitting on, only a few inches[6] from where her hand had been concealed.

Defendant can hardly analogize herself to the innocent bystander or visitor whose only connection to the target of a valid warrant is physical presence or proximity. Unlike defendant Ybarra, who "made no movements that might suggest an attempt to conceal contraband....," *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342, defendant's actions here were entirely consistent with such an attempt. Defense counsel's contention during the suppression hearing that defendant placed her hand down the side of the couch in an innocent effort to "shift positions" and make herself more comfortable during the search strains credulity and is unsupported by defendant's own testimony. Defendant's attempt to conceal a bag of crack under her cushion provided officers particularized prob-

able cause to suspect that additional crack or narcotics evidence might be present in her purse, which she identified as hers prior to the search of it. The existence of such particularized probable cause supported the search of defendant's person and her purse. *See Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342.

Additionally, the search of the purse was arguably justified as incident to a lawful warrantless arrest after the cocaine was found under the cushion. A warrantless arrest requires probable cause. *United States v. Travis*, 993 F.2d 1316, 1323 (8th Cir.) (citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)), *cert. denied,* —— U.S. ——, 114 S.Ct. 229, 126 L.Ed.2d 184 (1993). Probable cause exists when officers possess information that would "warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Id.* at 1323–24 (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Courts assess probable cause under the totality of the circumstances, noting that the police may draw reasonable inferences from circumstances which the general public may find innocuous. *See United States v. Segars*, 31 F.3d 655, 659 (8th Cir.1994). Here, defendant's suspicious conduct reaching down into the cushion of the couch after she had been directed not to do so, combined with the discovery of crack cocaine directly under that cushion moments later, warranted a prudent person in believing that defendant had been or was in possession of crack cocaine. At that point a warrantless arrest was justifiable, and a contemporaneous search of defendant's purse as within her area of "immediate control" was permissible under the principles

---

5. An unspecific warrant may be cured by a specific affidavit where "an affidavit [is] specifically incorporated by reference in and physically attached to the warrant, or at least [is] referenced in the warrant and physically present at the search site." *United States v. Decker*, 956 F.2d 773 (8th Cir.1992) (citing *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir.1976)); *cf. United States v. Tagbering*, 985 F.2d 946 (8th Cir.1993) ("[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.... [or] is merely present at the search") (quoting *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.

1987)). Here, the warrant explicitly referred to the accompanying affidavit, but it is unclear whether the affidavit accompanied the warrant to the search site. In any case, I do not rest my recommendation on such an interpretation of the warrant.

6. Although defendant would have me accept Gambrell's testimony that the baggie was six to twelve inches from the armrest, both Sorensen and Marti testified that the baggie was within two to three inches of the armrest; I find that it was within two to three inches of the armrest.

of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).[7]

Since the Fourth Amendment was not violated by the search of defendant's purse I shall recommend that defendant's motion to suppress be denied.

**IT THEREFORE HEREBY IS REC-OMMENDED** to the Honorable Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress (filing 8) be denied in all respects.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated April <u>12</u>, 1995.

---

**7.** *Cf. United States v. Morales,* 923 F.2d 621, 627 (8th Cir.1991) (search of bag held by defendant suspected of narcotics trafficking justifiable as search incident to warrantless arrest based on confidential informant's tip) (collecting cases); *United States v. Andersson,* 813 F.2d 1450, 1455–56 (9th Cir.1987) (since police had probable cause supporting warrantless arrest for cocaine possession when cocaine was visible in one suitcase, police could search defendant (who was standing a few feet from the suitcases in a motel room) and the immediate area, including containers, as a search incident to arrest); *cf. also United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir.) (search of arrestee's purse at police station justified because initial search of purse contemporaneous with arrest for bank robbery significantly reduced her reasonable expectation of privacy), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *United States v. Jeffers,* 520 F.2d 1256, 1268 (7th Cir.1975) (initial permissible search of defendant's boot which revealed narcotics provided probable cause for arrest and a resulting second search of defendant's purse was properly incident to that arrest), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).

Where the formal arrest follows "quickly on the heels of the challenged search" of the person searched, it is not particularly important that the search preceded the arrest rather than vice versa. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980).