788 A.2d 646

**Lisa Cheere CARTER,**

v.

**STATE of Maryland.**

**No. 35, Sept. Term, 2001.**

Court of Appeals of Maryland.

Jan. 11, 2002.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, and Anne Gowen, Assistant Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

In the matter now before us, the petitioner, Lisa Cheere Carter, asks us to consider whether a Frederick police officer's search of individual cigarettes in a pack contained in petitioner's lunch bag subsequent to her arrest on an out-

standing warrant issued by a Montgomery County court was a valid search incident to arrest under the Fourth Amendment of the United States Constitution and Article 26 of the Maryland Declaration of Rights. In so doing, petitioner also challenges the legality of her arrest by arguing that the State improperly failed to produce the arrest warrant at trial.

## I. Facts

In the summer of 1999, the petitioner, Lisa Cheere Carter (hereinafter "Carter"), took a job with Macro Janitorial Services, Inc., which had contracted with Frederick County to clean the Frederick County Courthouse and the facilities of the Frederick Police Department. As an employee of Macro, Carter had to undergo a preliminary background check for security purposes, which was undertaken by the Frederick Police Department at the behest of Bea Trout, the building manager for the Courthouse. As a result of this background check, the Frederick police found that there was an outstanding arrest warrant for Carter in Montgomery County.

On July 1, 1999, Carter reported for work at the Frederick Police Headquarters at which time Officer Steven Cirko of the Frederick Police Department, who had been notified by the police department dispatcher that Carter was wanted on the outstanding arrest warrant in Montgomery County, approached Carter, inquired as to her name, and took her into custody by bringing her into the processing area of the police station. At that time, he informed Carter that there was an outstanding warrant for her arrest in Montgomery County and that she was being placed under arrest based on the outstanding warrant. Within moments, Officers Cirko and Dawn Moore, also of the Frederick Police Department, searched Carter's belongings, which included a purple lunch sack that Carter had been carrying with her to work within which there was an open pack of cigarettes in which Officer Cirko discovered what he believed to be a marijuana cigarette. He field-tested the suspected marijuana cigarette, which tested positive for the substance. Officer Moore then transported Carter to the Frederick County Detention Center, served the

outstanding warrant from Montgomery County and charged her with possession of marijuana in violation of Maryland Code, Art. 27, § 287 based on discovering the marijuana cigarette in the cigarette pack found in Carter's lunch bag.[1]

On September 17, 1999, Carter filed a Request for Discovery and Motion to Produce Documents pursuant to Maryland Rule 4-263. In her discovery request, Carter asked the State to produce any relevant material concerning "[a]ny search or seizure of any kind of the Defendant . . . together with a copy of all arrest warrants, search warrants, applications and affidavits in support thereof, inventories, and all reports regarding any such searches and seizures whether or not the State intends to use any so seized at any hearing in the above-captioned case or at the trial of this matter."

Contemporaneous with her motion for production of documents, Carter filed a motion to suppress the evidence of the marijuana cigarette seized by Officer Cirko following her arrest.[2] Specifically, the motion stated, "[t]hat articles of evidence taken from [Carter] by police authorities were ob-

---

1. Section 287, concerning unlawful possession of controlled dangerous substances and paraphernalia states, in relevant part, as follows:

 Except as authorized by this subheading, it is unlawful for any person:
 (a) To possess or administer to another any controlled dangerous substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice.
 * * *
 (e) Any person who violates this section shall, upon conviction, be deemed guilty of a misdemeanor and be sentenced to a term of imprisonment for not more than four (4) years, a fine of not more than twenty-five thousand dollars ($25,000), or both; provided, however, that any such person convicted of a violation of this section involving the use or possession of marihuana shall be punished by a period of imprisonment not to exceed one (1) year or by a fine not to exceed $1,000.00 or both.

 Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 287.

2. In addition to the request for suppression of the marijuana, Carter sought the suppression of other items or identifications not relevant to the proceedings now before us.

tained as the result of an illegal search and seizure in violation of [Carter's] constitutional rights."

A hearing was held on the motion to suppress on November 19, 1999, at which time the State called Bea Trout and Officers Cirko and Moore to testify about Carter's arrest and the seizure of the marijuana cigarette. In the midst of the State's questioning of Bea Trout concerning her role in identifying Carter as the subject of the outstanding warrant defense counsel objected:

> Your Honor, the State has an additional problem in, the case is *Duggins v. State*, it's 7 Md.App. 486, 256 A.2d 354, it's a 1969 case. And the blurb is where defendant's counsel challenged the legality of a federal arrest warrant on [the] theory ... that ... the warrant was not properly completed and, therefore, legally defective, the State could not overcome the challenge by producing only testimony of those who procured warrants to the effect that it did exist and it was a lawful warrant. Now assuming the State is going to introduce a warrant somewhere in the evidence they produce, or testimony they produce before this Court, they need the warrant here in court. Hearsay testimony, what people say about the warrant is not sufficient under Maryland Law. It's, it's based in the best evidence rule, but it goes further than that actually.

The trial court overruled the objection on both hearsay and *Duggins* grounds.

Officer Cirko thereafter gave the following account of the arrest, search and seizure of the marijuana cigarette during direct examination:

> State: Did you make efforts to confirm that warrant through Montgomery County?
> Cirko: Our dispatch did, they notified us that the warrant was confirmed, and they were just waiting to find out whether it was going to be faxed to us, or whether Montgomery County wanted to come up and pick up Ms. Carter.
> State: And did you ever receive a copy of that warrant from Montgomery County?

Cirko: Yes sir, it was faxed up to us.

State: And did you ever obtain possession of that warrant?

Cirko: Yes, Officer Moore would have, sir.

State: Following your taking Ms. Carter into custody was a search done of her?

Cirko: Yes sir, it was.

State: Who did that search?

Cirko: I searched her bag that she was carrying with her, and Officer Moore did the body search, the strip search of Ms. Carter.

State: When you searched her bag what did you do with the contents of that bag?

Cirko: I took the contents out of the bag individually, inspected all of it, inside the bag were some food items, and numerous personal items, along with a pack of cigarettes, when I took the cigarettes out of the pack I found a marijuana cigarette within the pack.

State: Were there other cigarettes in the pack?

Cirko: I do believe so, sir.

State: What did you do with the marijuana cigarette?

Cirko: It was confiscated, I field tested it, received a positive result for marijuana and it was sent to the lab and placed on property.

Thereafter, defense counsel cross-examined Officer Cirko:

Defense: ... Did you make an inventory of the contents of this bag?

Cirko: No sir.

Defense: Did you get a warrant for the bag?

Cirko: No sir.

Defense: Was the bag closed when you had it?

Cirko: That I don't recall, sir.

Defense: What kind of cigarettes were these?

Cirko: I don't remember the brand, sir.

Defense: ... how many cigarettes were in the pack?

Cirko: That I don't remember either, sir.

Defense: Had the pack been opened before or not?

Cirko: Yes sir, the pack was open.

Defense: This marijuana cigarette in the pack, was it the first cigarette you pulled out, or the last, or in the bottom, or where?

Cirko: That I don't remember, sir.

Defense: Did you get a warrant for the cigarette pack?

Cirko: No sir.

Defense: Did you have any reason to believe at the time that you searched the contents of Ms. Carter's purse that there was any contraband in it before you started?

Cirko: No sir.

Defense: Did you bring a copy of the warrant from Montgomery County with you?

Cirko: No sir, I don't have the case file.

Following closing remarks by both parties, the court denied Carter's motion to suppress the seizure of the marijuana cigarette:

In this case what you have is a search incident to an arrest. Certainly as [defense counsel] points out it's not an inventory search, and I won't consider it as such. Background check was done, warrant was found to be outstanding from Montgomery County. Officer Cirko testified they verified that was a valid warrant. I do not agree that you have to physically produce the warrant today ....the arrest was a valid ... arrest. Pursuant to that arrest there is a search. He used the term bag. Even based upon her testimony this is akin to more like something that's traveling with her, not separate luggage or things of that nature. This is a search incident to arrest, it's something that's akin to her. Motion to suppress is denied.

A bench trial began on February 28, 2000. The trial court heard testimony from Bea Trout, Officer Cirko, and Officer Moore who testified on behalf of the State, and Carter who testified in her own defense. The State introduced the marijuana cigarette found in Carter's possession into evidence over

defense counsel's continuing objections during direct examination of Officer Moore. At the conclusion of the presentation of the State's evidence, defense counsel made a motion for a judgment of acquittal, which the trial court denied. Carter took the stand and gave the following account of the events and circumstances surrounding her July 1, 1999 arrest:

Defense counsel: Would you explain to the Court what happens in the back of the police station?

Carter: Oh well when I was back there in the processing room, well she came back and she patted me down, and you know, I didn't have any kind of contrabands [sic] or anything on me personally, you know.

Defense counsel: Um-hmm.

Carter: And so then Officer—

Defense counsel: The other officer—

Carter: Yeah—

Defense counsel:—the male officer that's there?

Carter:—yeah, the male officer, you know, he asked what was in here, and I said it was my lunch.

Defense counsel: Um-hmm.

Carter: And so then, you know, he, you know, he says well he has to search the bag, and which, you know, I have no problem with, I didn't have any problem with him searching the bag, 'cause it was my lunch.

Defense counsel: Um-hmm.

Carter: And then, you know, he had searched the bag, and then when he had took the cigarettes out, you know, he said well how many cigarettes do you have in here, I said well I guess it's round about two 'cause I asked a girlfriend of mine to give me some cigarettes. And then when he opened up the cigarette pack he took the two cigarettes out and then you know he smelt the pack, and then he opened up the pack and when he did like that it dropped out, it was a little roach, a mar, a little marijuana roach. And I told him right then there that's not mine.

■

The trial court found Carter guilty and sentenced her to one year imprisonment, which was suspended, and two years of supervised probation, during which Carter had to remain free of drugs and alcohol.

Carter filed an appeal with the Court of Special Appeals, asserting that the trial court erred in denying her motion to suppress the evidence obtained in the search of her lunch bag and pack of cigarettes, erred in ruling that her motion to suppress could be denied without production of the arrest warrant, and that the trial court failed to comply with Maryland Rule 4–264 when Carter waived her right to a jury trial. In an unreported decision, the Court of Special Appeals affirmed Carter's conviction, holding that the arresting officer did not violate the Fourth Amendment by searching Carter's lunch bag and the pack of cigarettes contained therein following her arrest. With regard to Carter's argument that the State failed to produce the arrest warrant at the suppression hearing, the Court of Special Appeals concluded, "because [Carter] did not challenge either the legality of her arrest or the illegality of the warrant at any time during the evidentiary phase of the suppression hearing, the State was not required under *Duggins* [7 Md.App. 486, 256 A.2d 354 (1969) ] to physically produce the warrant." [3]

Carter filed a Petition for a Writ of Certiorari to the Court of Appeals asking this Court to consider the following:

1. Whether the trial court erred in concluding that, without any basis for suspicion, the police could examine the individual cigarettes in a pack of cigarettes as a search incident to an arrest;

---

**3.** Petitioner has not challenged the validity of her jury trial waiver under Maryland Rule 4–246 before this Court. We do note, however, the Court of Special Appeals held that Carter made a knowing and voluntary waiver of her right to a jury trial as required by Rule 4–246, by being informed on the record in open court that she was entitled to have a jury of twelve citizens of Frederick County hear her case and decide her innocence or guilt, or that she could elect to have the matter heard by the judge, and by stating that she wished to have the matter decided by the judge.

2. Whether the trial court erred in concluding that where the arrest was made by a Frederick County Officer based on a Montgomery County Warrant, the State was not obligated to produce the warrant.

## II. Discussion

 Our review of a circuit court's denial of a motion to suppress evidence, ordinarily, is limited to the evidence presented at the suppression hearing. *See Ferris v. State,* 355 Md. 356, 368, 735 A.2d 491, 497 (1999). Thus, we refrain from engaging in *de novo* fact-finding and looking at the trial record for supplemental information. *See Cartnail v. State,* 359 Md. 272, 282, 753 A.2d 519, 525 (2000). In so doing, the evidence presented at the hearing on Carter's motion to suppress must be viewed in the light most favorable to the State. *See Scott v. State,* 366 Md. 121, 143, 782 A.2d 862, 875 (2001); *Simpler v. State,* 318 Md. 311, 312, 568 A.2d 22 (1990). We review legal questions *de novo,* and where, as here, petitioner raises a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case. *See Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420, 429 (2001); *Stokes v. State,* 362 Md. 407, 414, 765 A.2d 612, 615 (2001)(quoting *Jones v. State,* 343 Md. 448, 457, 682 A.2d 248, 253 (1996)); *In re Tariq A–R–Y,* 347 Md. 484, 489, 701 A.2d 691, 693 (1997), *cert. denied,* 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998). We will not disturb the trial court's factual findings unless they are clearly erroneous. *See Wengert v. State,* 364 Md. 76, 84, 771 A.2d 389, 394 (2001).

### A. Lawfulness of the search of a container within a container incident to a lawful arrest.

Carter relies on the Fourth Amendment to the United States Constitution and Article 26 of the Maryland Declaration of Rights in support of her challenge of the search of her lunch bag and package of cigarettes contained therein. The Fourth Amendment provides:

.The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. Article 26 of the Maryland Declaration of Rights states "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Dec. of Rights, Art. 26. We have stated that Art. 26 is considered *in pari materia* with the Fourth Amendment, such that we accord great respect and deference to the decisions of the United States Supreme Court in interpreting the federal amendment. *See Richardson v. McGriff,* 361 Md. 437, 452–53, 762 A.2d 48, 56 (2000); *Little v. State,* 300 Md. 485, 493, n. 3, 479 A.2d 903, 907, n. 3 (1984).

We consider whether Officer Cirko's warrantless search incident to arrest of Carter's lunch bag and the cigarette pack contained therein was reasonable. We have explained that the Fourth Amendment prohibits only those searches and seizures found to be unreasonable under the circumstances. *See Gadson v. State,* 341 Md. 1, 9, 668 A.2d 22, 26 (1995), *cert. denied,* 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *Little v. State,* 300 Md. at 493, 479 A.2d at 907; *see also United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605, 613 (1985). Carter asks this Court to adopt a rule which would limit warrantless searches incident to arrest to those searches directed at locating weapons or evidence of the crime for which the person has been arrested. In Carter's view, these would be the only searches meeting the reasonableness requirement of the Fourth Amendment, and thus, the search of Carter's lunch bag and cigarette pack would fail.

The Supreme Court previously has established "readily administrable rules" for warrantless searches incident to ar-

rest through its decisions in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) [4] and *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).[5]

Prior to the decision in *Chimel,* the Supreme Court had held that when a search is conducted incident to a lawful arrest, "whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence...." *Carroll v. United States,* 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 553 (1925). Thereafter in *Chimel,* the Supreme Court set forth the following standards for searches incident to lawful arrests:

---

**4.** In *Chimel,* the officers conducted a warrantless search incident to arrest of Chimel's entire three bedroom home, including the attic, garage and a small workshop. 395 U.S. at 754, 89 S.Ct. at 2035, 23 L.Ed.2d at 688. The search included officers looking inside of dresser drawers so that the officers could see if Chimel possessed any items from the burglary for which Chimel was being arrested. *Id.* The search, which lasted between forty-five minutes to an hour yielded several items stolen from a local coin shop. *Id.* Although the affidavit on which the arrest warrant was based had been set forth in conclusory terms, the California Court of Appeal and the California Supreme Court both found the arrest to be constitutionally valid because the officers had acted in good faith in obtaining the warrant and had enough information to constitute probable cause for Chimel's arrest. *Id.* at 754, 89 S.Ct. at 2035, 23 L.Ed.2d at 688–89.

**5.** In *Robinson,* a police officer stopped Robinson on reasonable suspicion that he was operating a motor vehicle without a valid license. 414 U.S. at 220, 94 S.Ct. at 469–70, 38 L.Ed.2d at 432. The officer arrested Robinson for operating a motor vehicle following revocation of his license and for obtaining a driving permit through misrepresentation. *Id.* at 220, 94 S.Ct. at 470, 38 L.Ed.2d at 432. The officer then conducted a patdown of Robinson during which he felt an object in the left breast pocket of the heavy coat Robinson was wearing. *Id.* at 221–23, 94 S.Ct. at 470–71, 38 L.Ed.2d at 433. Because the officer could not identify the object by merely feeling it through Robinson's coat, he reached inside of the coat pocket and pulled out a crumpled up cigarette package. *Id.* at 223, 94 S.Ct. at 471, 38 L.Ed.2d at 434. The officer opened the crumpled cigarette package to reveal fourteen gelatin capsules of heroin. *Id.* The Supreme Court upheld the warrantless search of Robinson's person and the cigarette package found in his left coat pocket as a lawful search incident to arrest. *Id.* at 236–37, 94 S.Ct. at 477, 38 L.Ed.2d at 441.

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel v. California,* 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. In *Robinson,* the Court further refined the doctrine espoused in *Chimel* as follows:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson,* 414 U.S. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 440–41; *see United States v. Jacobsen,* 466 U.S. 109, 122, 104 S.Ct.

1652, 1661, 80 L.Ed.2d 85, 100 (1984)("The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities"). Previously we have relied on the Supreme Court's decision in *Robinson* in recognizing that "the right of the police to search a suspect incident to a lawful arrest follows automatically from the arrest." *State v. Evans*, 352 Md. 496, 508, 723 A.2d 423, 429, *cert. denied*, 528 U.S. 833, 120 S.Ct. 310, 145 L.Ed.2d 77 (1999)(citing *Robinson*, 414 U.S. at 225–26, 94 S.Ct. at 472, 38 L.Ed.2d at 435).

In clarifying the point made in *Robinson* that there need be no additional justification for the search incident to arrest, the Supreme Court has stated, "it is the fact of custodial arrest which gives rise to the authority to search . . ." such that the officer need not indicate "any subjective fear" of the arrestee or suspect that the arrestee was armed. *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456, 461 (1973). In *Gustafson*, the arresting officer found marijuana cigarettes inside of a cigarette box located in the defendant's front coat pocket following a lawful arrest for driving without a driver's license. *Id.* at 262, 94 S.Ct. at 490, 38 L.Ed.2d at 459. The Supreme Court found that the officer was entitled to seize the marijuana cigarettes "as 'fruits, instrumentalities, or contraband' probative of criminal conduct." *Id.* at 266, 94 S.Ct. at 492, 38 L.Ed.2d at 462 (citing *Robinson*, 414 U.S. at 236, 94 S.Ct. at 477, 38 L.Ed.2d at 441; *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1925, 32 L.Ed.2d 612, 619 (1972); *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967); *Harris v. United States*, 331 U.S. 145, 154–155, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399, 1407–08 (1947)).

■ We find, therefore, that the officer's warrantless search of Carter's lunch bag was a lawful search incident to arrest. Remaining for our consideration is petitioner's contention that the police exceeded the scope of what would otherwise be a lawful warrantless search incident to arrest by

searching the open cigarette pack found inside the lunch bag. Carter argues that the warrantless search of the container within a container is unreasonable under the facts and circumstances of this case and exceeds the scope of what otherwise might be considered a valid search incident to arrest. While this Court has not previously considered the validity of a warrantless search incident to arrest of a container within a container, other courts have found such searches and subsequent seizures of evidence to be constitutionally permissible.

In *United States v. Kralik*, 611 F.2d 343 (10th Cir.1979), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1603, 63 L.Ed.2d 788 (1980), the police discovered an unlocked suitcase containing a sawed off shotgun in the trunk of a car while executing a valid search warrant for that car. The suitcase belonged to Kralik who asserted that absent a second search warrant, the police could not lawfully search the suitcase. *Id.* at 344. The United States Court of Appeals for the Tenth Circuit affirmed the trial court's denial of Kralik's motion to suppress the evidence obtained from the suitcase holding that the Fourth Amendment does not require a second or subsequent warrant to search a container within a container (here, a suitcase within the trunk of an automobile). *Id.* at 345. In reaching this conclusion, the court stated:

> Any other result is inconsistent with practicality. Many containers can be placed one within the other. Theory should not be entirely divorced from practicality.

*Id.* at 345. *See United States v. Buckhanan*, 905 F.Supp. 654, 661–62 (D.Neb.1995)(denying defendant's motion to suppress evidence of crack cocaine found inside of a cigarette case located within defendant's purse which was searched subsequent to a lawful warrantless arrest).

In *State v. Caraher*, 293 Or. 741, 653 P.2d 942 (1982), the Supreme Court of Oregon considered whether the police officer's search of the defendant's purse and wallet contained therein was properly classified as a search incident to arrest. In so doing, the Oregon court applied its own more stringent constitutional standards to uphold the search of the wallet.

*Id.* at 947. In *Caraher,* while transporting the defendant to a booking facility, the arresting officer opened the defendant's purse, removed the defendant's wallet and opened the coin compartment of the wallet revealing amphetamines. *Id.* at 943. The court upheld the search of the defendant's purse and wallet contained therein, although not for the benefit of protecting the officer nor for the purpose of preventing the destruction of evidence, because the defendant did not have access to the purse at the time of the search. *Id.* at 952. Rather, the court found that the search was reasonable because it was conducted close in time and space to the arrest and related directly to the arrest. *Id.* (citing *State v. Chinn,* 231 Or. 259, 373 P.2d 392 (1962)).

In the case sub judice, Carter was carrying her lunch bag with her at the time of the arrest. Although Officer Cirko testified that he was not conducting an inventory search of the bag, nor was he suspicious that Carter was concealing a weapon or contraband within the lunch bag, the Supreme Court's holding in *Gustafson, supra,* has rendered obsolete the need for the officer to express a subjective fear for safety or belief of evidence concealed within the bags or belongings which the defendant has within their control at the time of their arrest. *See Gustafson,* 414 U.S. at 266, 94 S.Ct. at 492, 38 L.Ed.2d at 461; *see also New York v. Belton,* 453 U.S. 454, 462–63, 101 S.Ct. 2860, 2865, 69 L.Ed.2d 768, 776 (1981)(holding that a warrantless search of the arrestee's jacket which was within the arrestee's immediate control inside the passenger compartment of the car just prior to his arrest was a valid search incident to a lawful custodial arrest). Rather, as the *Gustafson* Court found, the arresting officer is entitled to make a full search of the defendant's person incident to the lawful arrest. *See Gustafson,* 414 U.S. at 266, 94 S.Ct. at 492, 38 L.Ed.2d at 461–62.

Carter also gave Officer Cirko permission to search her lunch bag. Thus, under the facts and circumstances of this case, Officer Cirko conducted a reasonable warrantless search incident to arrest of Carter's lunch bag and pack of cigarettes.

## B. Defense counsel's request for production of the Montgomery County arrest warrant at the hearing on the motion to suppress.

■ Carter also argues that the Motion to Suppress should have been granted because at the hearing on the motion her defense counsel asked Officer Cirko if he had brought a copy of the Montgomery County warrant with him to which he replied "[n]o, sir, I don't have the case file." Carter postulates that by failing to produce the warrant at the hearing, the State failed to meet its burden of showing that the arrest was lawful. In support of her argument, Carter cites *Duggins v. State, supra,* as being analogous to the case at bar.

In *Duggins,* another case involving a warrantless search incident to arrest, there was an explicit challenge to the legality of an arrest warrant, and a demand that the warrant be produced to the court so that the court could evaluate its legality in determining whether Duggins's arrest was unlawful and the search unconstitutional. *See Duggins,* 7 Md.App. at 487–88, 256 A.2d at 355. The Court of Special Appeals held, "where, as here, the constitutional validity of that arrest was properly challenged by the appellant, evidence to show the basis upon which the arresting officers acted in making the arrest must affirmatively be shown by the State if it is to carry its burden of proving the legality of the arrest." *Id.* at 488, 256 A.2d at 356. The court also stated that because the appellant challenged the legality of the arrest and asked for production of the warrant, "the State was required to do more than simply make a testimonial showing that the warrant actually existed at the time of the arrest." *Id.*

The case now before us presents facts and circumstances distinguishable from those of the *Duggins* case. First of all, at the outset of the suppression hearing, defense counsel made the following statement:

I talked to the State about this this morning. I have the, what I have in discovery is the statement of probable cause, and we did serve on the State a request for all information regarding suppression issues, I believe we did. *In any*

*event, I have the same information that [the State's Attorney] does.*

(emphasis added). In fact, the Statement of Probable Cause recites that Officer Moore transported Carter to the Frederick County Detention Center, wherein Carter was served with the warrant, and charged with possession of marijuana arising out of the search incident to her arrest on the Montgomery County warrant.

Further distinguishing the present case from *Duggins* is the fact that Carter, unlike Duggins, specifically did not attack the legality of the arrest warrant in her mandatory pre-trial motions. Maryland Rule 4–252 provides in relevant part:

(a) Mandatory motions. In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

(1) A defect in the institution of the prosecution;

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

(4) An unlawfully obtained admission, statement, or confession; and

(5) A request for joint or separate trial of defendants or offenses.

Md. Rule 4–252 (2001). The challenges Carter made pursuant to Maryland Rule 4–252(a)(3) are limited by the very words of her motion to "suppress[ing] all evidence obtained by police authorities as the result of an illegal search and seizure." The motion to suppress does not specifically question the existence of the warrant or legal defects in the arrest warrant itself, as was the *Duggins* challenge. We can find no authority in Maryland or elsewhere that the lawfulness of an arrest can be vitiated by the State's failure to produce an arrest warrant at a suppression hearing when the defendant already has re-

ceived a copy of it and has not specifically challenged the legality of the warrant.[6]

Further, Carter relies on language taken from *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) and *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), as explained in *Ott v. State*, 325 Md. 206, 214, 600 A.2d 111, 114–15 (1992) to bolster her argument. Essentially, Carter argues that *Whiteley* and *Hensley* support her contention that the Motion to Suppress should have been granted because the State failed to prove the lawfulness of the arrest by not putting the warrant into evidence at the hearing.

Carter fails to acknowledge, however, that the Supreme Court recently and quite explicitly opined that, "[a]lthough *Whiteley* clearly retains relevance in determining whether police officers have violated the Fourth Amendment ... its precedential value regarding application of the exclusionary rule is dubious." *Arizona v. Evans*, 514 U.S. 1, 13, 115 S.Ct. 1185, 1192, 131 L.Ed.2d 34, 46 (1995)(internal citations omitted). In *Arizona*, the court applied the principles expounded in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to uphold the seizure of a hand-rolled marijuana cigarette and a bag of marijuana seized incident to an arrest by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant, when that record later was determined to be erroneous. 514 U.S. at 16, 115 S.Ct. at 1194, 131 L.Ed.2d at 47. In *Arizona v. Evans*, the State conceded that the defendant's arrest, based on a clerical computer error indicating the existence of an outstanding warrant for his arrest when in fact there was not, violated the Fourth Amendment. *See* 514 U.S. at 6, n. 1, 115 S.Ct. at 1189, n. 1, 131 L.Ed.2d at 41, n. 1. In upholding the

---

6. The record reflects that Carter requested a copy of the warrant in discovery, but does not indicate whether the State ever provided a copy pursuant to the discovery request. Defense counsel never filed a Motion to Compel Discovery pursuant to Maryland Rule 4–263(f). Nevertheless, the Statement of Probable Cause states that Officer Moore provided Carter with a copy of the arrest warrant upon transporting Carter to the Frederick County Detention Center following her arrest.

seizure, the Court emphasized the reasonableness of the police officer's conduct in light of the facts and circumstances presented to him at the time of the arrest and search. *See id.* at 10–11, 115 S.Ct. at 1191, 131 L.Ed.2d at 43–44 (explaining that the Fourth Amendment only prohibits those searches and seizures which are unreasonable).

We need not go so far as the Supreme Court did in *Arizona v. Evans* to apply the good faith and reasonableness principles of *Leon* to this case. We do note, however, that the Court in *Arizona v. Evans* did not exclude evidence seized in a warrantless search incident to an arrest in the face of allegations of governmental misfeasance, which clearly are not presented in the present case. *See id.* at 28–29, 115 S.Ct. at 1200, 131 L.Ed.2d at 56 (Ginsburg, J., dissenting)(reasoning that the majority erred in not applying the exclusionary rule based on her finding that court personnel and police officers are indistinguishable governmental actors when fulfilling the State's investigative duties which resulted in the erroneous police record).

In the present case, Officer Cirko had a copy of the Montgomery County warrant, served on the defendant and testified about his reliance on the existence of the warrant. The fact that he did not have a copy of the warrant in his possession at the hearing does not obviate the lawfulness of Carter's arrest.

For all of the foregoing reasons, we find that no violation of the Fourth Amendment or Article 26 occurred when Officer Cirko seized the marijuana cigarette from the pack of cigarettes in the lunch bag carried by the petitioner in the course of conducting a search incident to a lawful arrest based on an outstanding search warrant issued in Montgomery County. The lawfulness of the arrest is not vitiated by the failure of the State to reproduce the arrest warrant at the suppression hearing when the petitioner had a copy of the warrant and did not sufficiently challenge the legality of the arrest.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

BELL, C.J., ELDRIDGE, RAKER, JJ., dissent.

RAKER, Judge, dissenting:

I respectfully dissent. I agree with the majority that the search by the police of the individual cigarettes contained in the package concealed in petitioner's lunch bag would have been a valid search had the State, with competent evidence, met its burden of proving that the arrest was lawful. Nonetheless, I would reverse the judgment of the Circuit Court denying the motion to suppress on the grounds that the State, in failing to produce the arrest warrant at the suppression hearing, did not establish that the search of petitioner was pursuant to a lawful arrest.

By failing to produce the arrest warrant for the trial court's review once petitioner challenged the validity of the search, the State failed to make the required showing that the search was, in fact, incident to a valid arrest. Therefore, I would reverse the judgment of the Court of Special Appeals affirming the trial court's denial of petitioner's motion to suppress and reverse the judgment of conviction. I would hold that the evidence seized incident to petitioner's arrest improperly was admitted in evidence at her trial over her objection.

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). A warrantless search or seizure is presumptively unreasonable, unless the State can show that it falls within one of a few carefully delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Bell*, 334 Md. 178, 191, 638 A.2d 107 (1994). The State bears the burden of proving the applicability of an exception to the warrant requirement. *See Bell*, 334 Md. at 191, 638 A.2d at 114. This Court's review of the denial of a motion to suppress evidence in violation of the Fourth Amendment is limited to the record of the suppression hearing. *See Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519, 524 (2000); *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999).

The resolution of the search and seizure issue presented by this case is provided fundamentally by an application of the

Maryland Rules of Evidence, and specifically by the requirements of the Best Evidence Rule, codified in Maryland Rules 5–1001 through 5–1008. The Best Evidence Rule requires, as an evidentiary matter, that an original writing must be produced to prove its existence and contents, except for a few narrow exceptions that do not apply to the present case. *See* Maryland Rule 5–1002;[1] *see also* Maryland Rule 5–1004 (providing that the contents of a document may be proven extrinsically if the original is lost or destroyed, not reasonably obtainable, or is in the possession of the opponent). We have long recognized that the Best Evidence Rule is applicable in criminal cases in Maryland. *See Forrester v. State,* 224 Md. 337, 167 A.2d 878 (1961).

This case is strikingly similar to the case of *Duggins v. State,* 7 Md.App. 486, 256 A.2d 354 (1969), decided by the Court of Special Appeals more than thirty years ago. In that case, like the one *sub judice,* the appellant challenged the seizure of incriminating evidence from his person justified by the State as a search incident to a lawful arrest. The appellant challenged the legality of the warrant and demanded its production at his suppression hearing so that the court could assess the constitutional validity of his arrest. *See id.* at 487–88, 256 A.2d at 354–55. The State declined to produce the warrant, and the trial court denied the appellant's motion to suppress, finding that the testimony of the arresting agents that they had a valid warrant in their possession at the time of the arrest was sufficient evidence to demonstrate the arrest's validity. *See id.* Chief Judge Robert C. Murphy, later Chief Judge of this Court, writing for the Court of Special Appeals, held:

"Under the facts of this case, the constitutional validity of the seizure of the incriminating evidence from appellant's person manifestly depended upon the constitutional validity

---

1. Maryland Rule 5–1002 provides:
 "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."

of his arrest. And where, as here, the constitutional validity of that arrest was properly challenged by the appellant, evidence to show the basis upon which the arresting officers acted in making the arrest must affirmatively be shown by the State if it is to carry its burden of proving the legality of the arrest. The State relied solely upon the warrant to justify the arrest, and since appellant challenged its legality and called for its production, we think the State was required to do more than simply make a testimonial showing that the warrant actually existed at the time of the arrest."

*Id.* at 488, 256 A.2d at 355 (internal citations omitted). The court also relied on *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), when it observed that:

"if the State relied upon a search warrant to justify a search, but failed to produce it in evidence, 'there is no way of knowing the conditions under which it was issued, or determining whether it was based upon probably cause.' And it has been held that under the so-called 'best evidence rule,' the contents and existence of a search warrant may, where challenged, be proved only by the introduction of the warrant itself, unless it is shown that the warrant is unavailable for some reason other than the fault of the prosecution."

*Duggins*, 7 Md.App. at 488, 256 A.2d at 356 (citations omitted).

In *Duggins*, the Court quoted extensively from *People v. Wohlleben*, 261 Cal.App.2d 461, 67 Cal.Rptr. 826 (1968), a case applying the best evidence rule to an arrest warrant. The defendant had been arrested following a traffic stop based on outstanding warrants. At trial, the State did not produce the warrants and instead attempted to prove their existence and contents by parole evidence. The court overruled defense counsel's objection, and the intermediate appellate court reversed, applying the best evidence rule. In reversing defendant's conviction for possession of marijuana found in a search incident to this arrest, the court applied the best evidence rule and stated:

"Unless a foundation is laid for the use of other evidence, no evidence of the contents of a writing other than the writing itself is admissible.... The contents of the warrants under which defendant was arrested were necessarily in issue since it was incumbent upon the prosecution to prove that defendant was the person named in the warrants. Defendant having objected to the competency of the prosecution's evidence of the warrants, the court erred in not requiring that the original warrants be produced or that a proper foundation be established for the use of the secondary evidence. A rule which requires the production of the original warrant does not place a burden on the People because, as the Supreme Court observed in People v. Burke [61 Cal.2d 575, 39 Cal.Rptr. 531, 394 P.2d 67, 68 (1964) ], in connection with search warrants, 'Ordinarily proof of the existence of a search warrant is a simple matter, and in the face of an objection that the evidence has been illegally obtained, it seems obvious that the prosecution will produce a warrant if one exists.' "

*Id.* at 830.

The *Duggins* court also cited *Cain v. State,* 113 Ga.App. 477, 148 S.E.2d 508 (1966) with approval. In that case, the defendant objected to oral testimony about the contents of a search warrant on the ground that the evidence seized pursuant to the warrant was not admissible until the State first established a valid search warrant. The trial court overruled defense counsel's argument, and the appellate court reversed, stating that defense counsel had stated "an objection that the existence and validity of the search warrant had not been shown by the best evidence, and that until such showing evidence of the result of the search was inadmissible." *Id.* at 511. The court held that the trial court erred in permitting parol testimony of the contents of the warrant.

The same analysis is equally applicable to the case at bar. Prior to trial, petitioner filed a pretrial motion, pursuant to Maryland Rule 4–252, which included a motion to suppress the evidence taken from petitioner by police "as the result of an illegal search and seizure." During the suppression hearing,

petitioner's counsel opposed the search of petitioner's belongings after she was taken into custody based on the allegation that she was wanted through Montgomery County.

At the hearing, petitioner's counsel objected to the State's attempt to establish the existence and validity of the arrest warrant without producing the warrant itself. Defense counsel made a timely objection *during* the suppression hearing as to the hearsay evidence related to the contents of the warrant:

"[DEFENSE COUNSEL]: Your Honor, the State has an additional problem, the case is *Duggins v. State*, it's 7 Md.App. 486 [256 A.2d 354], it's a 1969 case. And the blurb is where defendant's counsel challenged the legality of a federal arrest warrant on the theory that . . . it was possible for the warrant was not properly completed and, therefore, legally defective, the State could not overcome the challenge by producing only testimony of those who procured warrants to the effect that it did exist and it was a lawful a warrant. *Now assuming the State is going to introduce a warrant somewhere in the evidence they produce, or testimony they produce before this Court, they need the warrant here in court.* Hearsay testimony, what people say about the warrant is not sufficient under Maryland law. It's, it's *based in the best evidence rule,* but it goes further than that actually." (emphasis added)

When petitioner challenged the validity of the search incident to her arrest at the pretrial hearing on her motion to suppress, the State's burden to prove the legality of her arrest and the resulting search was triggered. The State failed to produce an original or even a copy of the arrest warrant at the hearing on petitioner's motion to suppress. Nor did the State make any showing that the original warrant was unavailable for some reason other than the fault of the State. Clearly, the original warrant is the best evidence of its terms and contents. *See Brown v. State,* 227 Miss. 823, 87 So.2d 84, 85 (1956) ("[T]he warrant itself was the best evidence of its existence and terms, and . . . the original should be offered in evidence, or proof be made that it was lost, or could not be produced, . . . to justify admission of secondary proof. . . ."). Nonethe-

less, the majority gives no explanation for how it is possible for a trial court to determine, as a matter of law, that a contested search was incident to a validly executed arrest warrant without seeing the warrant itself. As this Court opined in *Howell*:

"In passing upon issues which are of constitutional dimension, a court can neither fill gaps in the record with conjecture nor substitute surmise for positive proof. Consequently, care should be taken by the State in presenting its case to insure that there will be sufficient evidence, if any exists, placed in the record to justify the execution of a warrantless search incident to a lawful arrest."

*Howell*, 271 Md. at 386, 318 A.2d at 193.

The mistake that the majority makes in this case is in conflating the *discovery* issue of whether a copy of the arrest warrant was provided to petitioner prior to trial with the *evidentiary* issue of whether the original warrant was produced and entered in evidence at the pretrial hearing on petitioner's motion to suppress. In doing so, the majority obliquely concludes that "[t]he lawfulness of the arrest is not vitiated by the failure of the State to reproduce the arrest warrant at the suppression hearing when the petitioner had a copy of the warrant and did not sufficiently challenge the legality of the arrest." Maj. op. at 467. This case is not about pretrial discovery. Therefore, it is irrelevant whether a copy of the warrant was given to the defendant at the time of the arrest or to her counsel during discovery.

The majority fails to address the real issues presented— namely, the *manner* in which the State can meet its burden to prove that an arrest is valid when it forms the basis for a contested search incident to arrest and whether the State *sufficiently proved* that petitioner's arrest in this case was lawful.[2] Nor does the majority explain how petitioner's al-

2. As the Court of Special Appeals explained in *Duggins v. State*, 7 Md.App. 486, 490 n. 2, 256 A.2d 354, 356 n. 2 (1969): "We note that

leged possession of a copy of the warrant resolves the failure of the State to meet its burden or how petitioner's challenge to the legality of her arrest was "insufficient" given her motion to suppress, her attorney's objections at the suppression hearing, and the allocation of the burden of persuasion with respect to the constitutional issue.

Accordingly, I respectfully dissent. Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join in this dissent.

---

the warrant is in fact available to the prosecutor since the Attorney General has appended it to his brief on appeal. For obvious reasons, however, the time to produce the warrant was at the trial when the issue of the legality of the arrest was before the court for resolution."