## MARY F. TIMANUS

*vs.*

## JOHN C. LEONARD AND CHARLES T. DELANEY.

*Trespass: entry of another's land; damages; when nominal only.*

Any unauthorized entry upon the lands of another is a trespass, and whether the owner suffers substantial injury or not, he at least sustains a legal injury which entitles him to a verdict for damages, although they may be merely nominal.

p. 588

In such a case, in order to entitle the plaintiff to a verdict, it is not necessary that he should give affirmative proof that he had sustained that particular amount of damages.          p. 588

To entitle a plaintiff in such a case to more than nominal damages, it must be shown from the evidence that he has sustained special damages in consequence of the wrong complained of, or that the unauthorized entry or trespass was willful, wanton or malicious, or that the trespass was committed with such reckless disregard of the rights of the plaintiff as to entitle him to punitive or exemplary damages.          p. 588

Where a contractor employed in changing the grade and in paving a street, by mistake, took some loads of gravel from a vacant lot, in a way which caused it no injury, it was *held,* that owner of the lot was not entitled to any more than nominal damages.          p. 590

*Decided November 12th, 1913.*

Appeal from the Baltimore City Court (HARLAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE JJ.

*John Watson, Jr.,* for the appellant.

*William P. Lyons,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellant, plaintiff below, brought an action of trespass *quare clausum fregit* against the appellees, defendants below, alleging in her declaration that the defendants broke into and entered upon the lands of the plaintiff situated on the east side of Irving avenue, Baltimore City, and "dug up from said lands and carried away a large amount of earth." To this declaration each of the defendants pleaded that he did not commit the wrong alleged.

At the conclusion of the evidence offered by both the plaintiff and defendants, the jury was instructed by the Court below, at the request of defendants, that there was no evidence in the case which entitled the plaintiff to exemplary damages against either of the defendants, and the Court of its own volition further instructed the jury that "the evidence in this case is not legally sufficient to warrant a verdict against either of the defendants for more than nominal damages."

It is from the ruling of the Court in granting the prayers named, and in refusing the plaintiff's prayer, which we will hereafter refer to more particularly, and in admitting certain testimony excepted to by the plaintiff, that this appeal is taken.

It is disclosed by the record that John C. Leonard, in the year 1909, under a contract with the Mayor and City Council of Baltimore, graded and paved Irving avenue between Frederick road and Massachusetts avenue, and in the grading and paving of said avenue the other defendant, Charles T. Delaney, acted as his foreman.

In grading said avenue there was found in its bed, where a stream had once crossed it, muck and mud which had to be removed and the excavation filled with proper earth before paving the street at that point. The defendant had previously obtained from at least two persons, Helfrich and Hammer, permission to get dirt for such purposes, should it be required in connection with the work upon said street, from lots owned by them in that vicinity, without charge therefor. But it

appears from the record that a part of the earth required to
fill the excavation made by the removal of the muck and mud
above mentioned from the bed of the street, was taken, with-
out permission of the plaintiff, from the lot of land on Irving
avenue, mentioned in the declaration, * * * owned by her
and of which she was in possession, adjoining the lot of
Hammer. Her lot was several feet above the grade of the
street, and the excavation made in the removal of the earth
therefrom extended only to the depth of the grade of the
street and started at a point twenty feet or more from the
street, the excavation being about where the cellars would be
when houses were erected upon said lot.

The evidence of the plaintiff discloses that in the removal
of said earth no damage or injury was done to the land, the
plaintiff stating in her testimony "that beside the dirt that
had been taken there, no other damage had been done on the
lot at all." The value of the dirt, if any, was not shown.
The only evidence in connection therewith was that of the
defendants, which was that the dirt so removed had no value;
that others owning lots in that vicinity, similarly located
disposed of the earth above the grade level without charge
therefor.

The defendant Leonard in the spring of 1909, prior to or
about the time of the commencement of the work, under-
went a surgical operation which resulted in the impairment
not only of his physical, but also his mental powers, and he
was thereby largely prevented from giving active supervision
to this work and depended largely upon his subordinates.
Delaney, as he testifies, was required to look after other work
as well as the work upon Irving avenue, and therefore one
Fallon was placed in charge of the work upon Irving avenue
in the absence of Delaney. At the time the excavation was
being made and filled, Leonard was spending much of his
time at Atlantic City, only occasionally coming to Baltimore
and then remaining only for a short while, and thus he gave
but little, if any, attention to the work of grading and pav-
ing Irving avenue. Later, in the summer or fall of 1909,
he went to a sanatorium.

Delaney, in his testimony, stated that when he discovered that dirt was being taken from the lot which he afterwards learned was the plaintiff's lot, he asked Fallon, the party in charge of the work in his absence, why he was taking the dirt from that lot, to which Fallon replied that he was told by Leonard to get it from that location, and Delaney assuming that to be true and supposing that Leonard had permission from the owner of the lot to remove such dirt, allowed them to continue removing said dirt from the plaintiff's lot, until about two hundred and eighty cubic yards of dirt had been removed therefrom. After the dirt had been removed he was notified by one Gordon, agent of the plaintiff, that the defendant had taken dirt from the lot of the plaintiff without her permission. This, as he states, was the first information that he had that the lot from which the dirt was taken was the lot of the plaintiff. Upon inquiry he found it to be true and admitted to Gordon that a part of the dirt used in filling the excavation had, in fact, been taken from the plaintiff's lot, but that the most of it had been taken from other sources. He, however, suggested that he would "shape the lot up" if he, Gordon, would like for him to do so, telling him that he would put the dirt back and put the lot in the condition it was before the dirt was taken. Gordon said "he did not think that would do" and suggested that he see the plaintiff. This he did and repeated the offer to her, but she, in turn, sent him back to Gordon. The record does not disclose that anything more was done towards attempting to adjust the alleged claim of the plaintiff.

It also appears from the record that a bill for extra labor and work of men and teams in connection with the aforesaid excavation and the filling of the same, was made out and presented for payment by Delaney, for and on behalf of Lenoard, to the Commissioners for Opening Streets, amounting in all to $536.44. We mention this fact, not that we regard it important in stating the facts from which the rulings of the Court are to be reviewed, but because of the stress laid upon it by the counsel for the plaintiff both in his printed brief

and in his oral argument in support of the contention made by him. Delaney, as he testifies, understood from his conversation with Mr. Christhilf, chief engineer for the Commissioners for Opening Streets and the person supervising the work for and on behalf of the city, that he was to keep an account of the actual cost of doing this unexpected work, for the payment of which the contract with the city did not, in his opinion, provide. In this account no charge is made for the dirt taken from the lots of the plaintiff and others used in filling such excavation, but only the actual cost of the labor of self, men and teams and the use of certain implements were charged in said bill. The bill, however, as made out was not approved and he was only allowed for the number of cubic yards of earth excavated at the rate allowed him by the provisions of the contract, which was far less than the amount of his bill.

With these facts in evidence, the plaintiff asked that the jury be instructed that should they find that the lot of land mentioned in the declaration was owned by, and was in the possession of the plaintiff, and that Delaney was the foreman of Leonard in charge of the work of grading the avenue therein mentioned, under the aforesaid contract with the city, and as such foreman had control of the operations under said contract, and that he or the men under him, acting under his direction or with his knowledge and consent, and without the permission of the plaintiff, "entered upon the lot of ground aforesaid and dug up and carried away earth from said lot, then said John C. Leonard and said Delaney are liable to the plaintiff for such damages as the jury may believe from the evidence the plaintiff has sustained by reason of the excavation and carrying away of said earth, and such further damages as will, in the judgment of the jury, punish the defendants for their said acts and will tend to deter others from committing similar trespasses."

The Court refused to grant this prayer, and as we have said, granted the prayers of the defendants instructing the jury that there was no evidence which entitled the plaintiff

to exemplary damages against either of them, and of its own volition instructed the jury that there was no evidence legally sufficient to warrant a verdict against either of the defendants for more than nominal damages.

By the undisputed evidence in this case, the entry of the defendants upon the lands of the plaintiff was unauthorized, and therefore was a trespass, and for such invasion of her rights the plaintiff is entitled to recover some damages of the defendants. It was not necessary, in order to entitle the plaintiff to a verdict, that she should have given affirmative proof that she had sustained any particular amount of damages; for every unauthorized entry upon the lands of another is a trespass, and whether the owner suffers substantial injury or not, he at least sustains a legal injury, which entitles him to a verdict for damages. Such damages may be merely nominal. *Balto. & Ohio R. R. Co.* v. *Boyd,* 67 Md. 40; *Ashby* v. *White,* 2 Lord Raym. 955; *Mellor* v. *Spateman,* 1 Saunders (note 2), p. 346a; *Taylor* v. *Henniker,* 12 Ad. & El. 488; *Dixon* v. *Clow,* 24 Wendell, 188.

To entitle the plaintiff in this case to more than nominal damages, it must be shown from the evidence that she has sustained special damages in consequence of the wrong complained of, or that the unauthorized entry or trespass was wilful, wanton or malicious, or that the trespass was committed with such reckless disregard of the rights of the plaintiff as to entitle her to punitive or exemplary damages.

There is no evidence as we have said, of special damages sustained by the plaintiff as a result of the wrongful entry or trespass of the defendants. In her testimony she stated that she had suffered no injury to the land in consequence of the removal of the earth therefrom, and in our opinion it is not shown by the evidence that the dirt so taken from her lot had any value whatever. But should we be wrong in this conclusion, there is certainly no evidence establishing its value upon which a verdict for special damages could have been rendered; and there is, we think, so far as the record discloses, an absence of any such elements of wanton or

malicious motives, or such reckless disregard of the rights of
the plaintiff in the commission of the trespass as would en-
title the plaintiff to claim punitive or exemplary damages,
and therefore the Court, in our opinion, committed no error
in its instruction to the jury or in its rulings upon the pray-
ers.

Why the defendant directed Fallon to go upon the lands of
the plaintiff and remove dirt therefrom, if he did so direct
him, is not clearly or satisfactorily shown by the record.
Fallon was not upon the witness stand, and although Leonard
was present and testified at the trial of the case below, nothing
was asked him concerning the alleged direction given to
Fallon. He may, or may not, have given direction to Fallon
as to the place from which the dirt was to be procured, but
if he did, it is at least possible, if not probable, that Fallon
misunderstood his direction as to the location of the lot, in-
asmuch as the Hammer lot, from which he was permitted by
its owner to take dirt if needed by him, adjoined the lot of
the plaintiff, and that it was from the Hammer lot and not
from the lot of the plaintiff that the dirt was to be taken.
But whether this be the correct explanation or not, there was
no legally sufficient evidence before the jury tending to show
that the entry upon the lands of the plaintiff by Leonard was
made with the motives or in the manner above stated, en-
titling the plaintiff to exemplary damages against him. And
this is also true of the defendant Delaney. His explanation
as to why the dirt was permitted to be removed from the lot
of the plaintiff, to say nothing of his conduct thereafter, af-
firmatively shows that his participation in the wrong com-
plained of was not wilful or malicious, or that the trespass
was committed by him with a reckless disregard on his part
of the rights of the plaintiff. He, an agent of Leonard, was
told by Fallon, likewise an agent of Leonard, that he was di-
rected by Leonard to get the dirt from the lot of land that he
subsequently learned was owned by the plaintiff.

The appellant, in her first and second exceptions, has ex-
cepted to the admission in evidence of the conversation be-

tween Fallon and Delaney, in which the former told the latter that he was directed by Leonard to take the dirt from the lot which was subsequently ascertained to be the lot of the plaintiff. The ground of the objection is, that it is hearsay. We have no difficulty in reaching the conclusion that this testimony was entirely proper, if for no other purpose, to show the entire absence of the essential elements in the commission of the trespass by him upon which the plaintiff could claim exemplary damages.

This disposes of all the exceptions, the third exception having been waived by the appellant.

It is urged by the appellant that she is entitled to special damages in this case, even though no evidence of such special damages was offered or submitted to the jury, and in support of this contention cites and relies upon the case of the *Baltimore & Ohio R. R. Co.* v. *Boyd, supra,* in which it says: "It is true, there is no evidence whatever of any special damages sustained, or that the plaintiffs were hindered or obstructed in any proposed use of their lot, by reason of the presence and use of the railroad tracks; but, nevertheless, we are of opinion that the plaintiffs are entitled to a reasonable compensation for the use of their land, and we think this is measured by what would be a fair rental value for the ground, occupied as it has been, for the time covered by the actions, and nothing more."

That case, however, does not sustain the contention of the appellant. There the land was used and occupied for years by the railroad, and the Court decided that the plaintiffs could recover reasonable compensation for the use of their land, but not that the plaintiffs could recover for special damages not proven. In this case there is no claim made, nor can any be made, for compensation for the use and occupation of the land, for it was not used and occupied by the defendants.

We will thus affirm the judgment of the Court below.

*Judgment affirmed, with costs to the appellees.*