814 A.2d 127

Earnest FORD

v.

**BALTIMORE CITY SHERIFF'S OFFICE.**

**No. 2514, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Dec. 27, 2002.

108

110

Joseph I. Tivvis, Jr. (Leonard C. Redmond, III, P.C. on the brief), Baltimore, for appellant.

Frank W. Mann, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Kimberly Smith Ward, Asst. Atty. Gen. on the brief), Baltimore, for appellees.

Argued Before ADKINS, GREENE and CHARLES E. MOYLAN (Retired, Specially Assigned), JJ.

GREENE, Judge.

On March 3, 1999, appellant, Earnest Ford, filed a complaint in the Circuit Court for Baltimore City naming the

Baltimore City Sheriff's Office and Baltimore City Deputy Sheriff's Arthur Phillips, Mary Krall, and Arthur Seabrook as defendants in a suit alleging counts of assault, battery, negligence, negligent trespass, intentional trespass, false arrest, intentional infliction of emotional distress, negligent training and supervision, and violations of the Maryland State Declaration of Rights. Thereafter, appellant amended his complaint to remove the Baltimore City Sheriff's Office as a defendant. Appellant instead added the State of Maryland as a defendant in the amended complaint. On November 30, 2001, at the conclusion of a hearing, the court granted a Motion for Summary Judgment filed by appellees. Appellant subsequently filed a Motion to Vacate, or in the Alternative, for Reconsideration and a Request for Hearing. The court denied that motion on January 8, 2002.

Appellant noted an appeal from the court's January 8, 2002, decision to present the following questions for review [1]:

I. Did the court err in ruling that Deputy Phillips did not act with malicious intent?

II. Did the court err in concluding that the State was not negligent?

III. Did the court err in concluding that appellees did not violate appellant's State constitutional rights?

Regarding appellant's first question presented, we hold that the facts viewed in a light most favorable to appellant do not support a finding of malice or negligence. We conclude, however, that the court erred in dismissing the State constitutional claims against the State.

## FACTS

In 1995, the Circuit Court for Anne Arundel County issued an arrest warrant for Joseph Queen, who was charged with non-support. The warrant identification letter noted that Queen was an African–American male, 5'9" tall, and weighed

---

1. On appeal, the State of Maryland and the three deputies are the appellees.

approximately 155 lbs. The warrant notification letter was dated July 28, 1995, and indicated that the warrant was "due" on October 28, 1995. Queen was sentenced to eighteen months in the Anne Arundel County Detention Center on January 22, 1998. The warrant was consequently dismissed on the day of Queen's sentencing.

On March 10, 1998, not realizing the arrest warrant had been dismissed, Baltimore City Deputy Sheriffs Phillips, Krall, and Seabrook attempted to execute the warrant at 2705 Norland Road, Baltimore, Maryland, where Ford allegedly had resided since 1993. The sheriffs were dressed in plain clothes with their badges around their necks. Following procedure, Deputies Phillips and Krall approached the front door while Deputy Seabrook guarded the back door to ensure that the suspect did not escape.

Upon knocking on the front door, the deputies were greeted by appellant, an African–American male, standing 5'9", but weighing approximately 210 lbs. Appellant was a Maryland State Trooper, although this fact was unknown to appellees. The parties dispute whether Deputy Phillips identified himself or stated the purpose of the visit.[2] Deputy Phillips asked permission to enter the residence to speak with appellant. Appellant stated that the deputies could not come in and attempted to close the front door. Deputy Phillips stuck his foot in the door to keep it from closing and he and Deputy Krall forced their way into appellant's home. Upon entering the residence, Deputy Phillips advised appellant that he had a warrant permitting him to enter appellant's home.[3]

Appellant, faced with the forcible entry, moved toward his telephone to attempt to call for assistance. Appellant contends that Deputy Phillips, seeing the furtive movement, jumped on his back and pinned him on the couch. Although

---

**2.** Appellees contend that Deputy Phillips identified himself and stated that the deputies had a warrant. Alternatively, appellant alleges that the deputies never identified themselves as law enforcement officers.

**3.** Appellant contends that the deputies refused to show him the warrant.

these facts are in dispute, it is clear that appellant, at some point, was able to call 911 for assistance and informed the operator that unknown individuals were in his house. Appellant was also able to make a second call to his Maryland State Police barracks. It is undisputed that appellant refused to inform the deputies of his identity.

At this time, Deputy Seabrook entered the home to assist the other deputies and search for other people. Deputy Seabrook, while searching the residence, noticed a photograph of appellant wearing a State Trooper uniform. Deputy Seabrook informed the other deputies of his discovery. Thereafter, Deputy Phillips asked appellant if he was a Maryland State Trooper, but appellant would not reveal his identity.[4]

Shortly thereafter, Baltimore City police officers arrived in response to appellant's 911 call. Deputy Phillips explained to the responding officers that he possessed an arrest warrant for an individual living at the address and that the deputies were attempting to determine if appellant was the subject of the warrant. Officer Derek Phyall, one of the Baltimore City officers, recognized appellant and indicated that appellant was a Maryland State Trooper. A debate arose between Deputy Phillips and Officer Phyall when the officer refused to reveal appellant's identity and defended appellant's right to refuse to answer the deputies' questions. Appellant eventually went upstairs and retrieved his driver's license. The license revealed that appellant was not the subject of the arrest warrant. Consequently, Deputy Phillips recorded the information, apologized to appellant, and left the residence.

Appellant further contends that Deputy Phillips used obscenities and abusive language during the entire incident. He further alleges that he sustained injuries to his back when Deputy Phillips jumped on him to subdue him.

---

4. Appellant contends that the deputies had not identified themselves or their purpose for being in his home. Appellant explained he refused to disclose his identity because he had not violated any laws, was in his own home, and consequently was under no obligation to respond.

On March 3, 1999, appellant filed a Complaint in the Circuit Court for Baltimore City alleging assault, battery, negligence, negligent trespass, intentional trespass, false arrest, intentional infliction of emotional distress, negligent training and supervision, and violations of the Maryland State Declaration of Rights. The complaint named the three Baltimore City deputy sheriffs and the Baltimore City Sheriff's Department as defendants. On March 31, 1999, the defendants filed a Motion to Dismiss. Thereafter, appellant filed an amended complaint in which he eliminated the Baltimore City Sheriff's Department as a defendant and instead included the State of Maryland. Defendants filed another Motion to Dismiss that was subsequently denied on May 4, 1999. Consequently, appellant filed a second amended complaint against the State of Maryland and the Baltimore City deputy sheriffs as defendants. Specifically the second amended complaint alleged assault, battery, negligence, false arrest, and intentional infliction of emotional distress against the State of Maryland, Deputies Phillips, Krall and Seabrook. The second amended complaint also included counts of negligent trespass, intentional trespass, violations of the State Declaration of Rights against all four defendants, and counts of negligent training and supervision against the State of Maryland.

On or about April 7, 2000, at the conclusion of discovery, appellees filed a Motion for Summary Judgment with regard to the second amended complaint in its entirety. On May 2, 2000, the court granted appellees' motion. On May 19, 2000, appellant filed a Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment. On this same date, appellant also filed a motion to vacate or, alternatively, for reconsideration of the court's grant of appellees' motion for summary judgment. The court, on June 14, 2000, denied both appellant's motion to extend time and motion to vacate or reconsider the grant of appellees' motion for summary judgment.

On July 13, 2000, appellant noted an appeal to this Court, challenging the grant of appellees' summary judgment motion and the denial of appellant's subsequent motions. In an

unreported opinion, filed on March 27, 2001, we reversed the circuit court's grant of summary judgment and remanded the case for further proceedings so that the circuit court could consider appellant's opposition to appellees' motion for summary judgment. A hearing was held on November 30, 2001. At the conclusion of the hearing, the court again granted the motion for summary judgment in favor of all defendants. On December 10, 2001, appellant once again filed a Motion to Vacate or, In the Alternative, for Reconsideration and Request for Hearing. That motion was denied on January 8, 2002.

Appellant thereafter noted this appeal.

## DISCUSSION

### Standard of Review

Maryland Rule 2–501(e) provides, in relevant part:

The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

When ruling on a motion for summary judgment, a court must view the facts, including all inferences, in the light most favorable to the opposing party. *See Jones v. Mid–Atlantic Funding Co.*, 362 Md. 661, 676, 766 A.2d 617 (2001); *Williams v. Mayor & Baltimore*, 359 Md. 101, 114, 753 A.2d 41 (2000). The trial court on summary judgment must not try the case or decide factual disputes, but decide the case when no dispute of material facts exists. *See Grimes v. Kennedy Krieger Inst. Inc.*, 366 Md. 29, 73, 782 A.2d 807 (2001); *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 205–06, 680 A.2d 1067 (1996); *Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981). The standard of appellate review is whether the trial court was legally correct. *Pence v. Norwest Bank Minn., N.A.*, 363 Md. 267, 279, 768 A.2d 639 (2001); *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 144, 642 A.2d 219 (1994); *Sapo-*

*nari v. CSX Transp., Inc.*, 126 Md.App. 25, 37, 727 A.2d 396 (1999).

## I. Malice

Appellant contends that the circuit court erred in granting appellees' motion for summary judgment because the facts viewed in the light most favorable to appellant give rise to a genuine dispute regarding malice. We do not agree.

We begin by generally examining the Maryland Tort Claims Act (MTCA). We note that generally under common law, the State enjoys sovereign immunity and is thus protected from suit for both ordinary torts and State constitutional torts. *Baltimore Police Department v. Cherkes*, 140 Md.App. 282, 306, 780 A.2d 410 (2001) (citing *Condon v. State of Md.-University of Maryland*, 332 Md. 481, 492, 632 A.2d 753 (1993)). The State, however, has partially waived this immunity by statute. The MTCA provides in pertinent part:

> (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.

> (2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.

Md.Code (1975, 1999 Repl.Vol.), § 12–104(a) of the State Gov't Article.

The MTCA further provides:

> State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article.

Md.Code (1975, 1999 Repl.Vol.), § 12–105 of the State Gov't Article.

Section 5–522 of the Courts and Judicial Proceedings Article states in pertinent part:

(a) Tort liability—Exclusions from waiver under § 12–104 of the State Government Article.—Immunity of the State is not waived under § 12–104 of the State Government Article for:

\* \* \*

(4) Any tortious act or omission of State personnel that:
(i) Is not within the scope of the public duties of the State personnel; or
(ii) *Is made with malice or gross negligence;*

\* \* \*

(b) Same—State personnel.—State personnel, as defined in § 12–101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is *made without malice or gross negligence,* and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

Md.Code (1975, 2002 Repl.Vol.), § 5–522 of the Courts and Judicial Proceedings Article (emphasis added).

■ The preceding clearly establishes that a party can bring a viable tort action against the State when the tort was committed by a State employee acting within the scope of his or her employment and without malice or gross negligence. Thus, the State has accepted vicarious liability arising from the tortious conduct of State personnel. *See State v. Card,* 104 Md.App. 439, 447, 656 A.2d 400 (1995).

The MTCA also clearly provides that a State employee acting within his or her scope of employment and without malice or gross negligence is immune from suit. If, however, the State employee has acted with malice or gross negligence, or the State employee has acted outside the scope of his or her employment, the State is immune from suit and the injured party may only bring a viable tort claim against the State

employee. Md.Code (1975, 2002 Repl.Vol.), § 5–522 of the Courts and Judicial Proceedings Article.

In the case at bar, we must determine whether the facts viewed in the light most favorable to appellant and all reasonable inferences arising from those facts, could support a finding that the deputies acted maliciously or in a grossly negligent manner. Such a finding of malice or gross negligence is necessary to establish a viable claim against the deputies as State employees. Notably, appellant's second amended complaint does not contain any counts alleging that appellees acted in a grossly negligent manner or outside the scope of employment.

It is clear in the instant case that in order to determine whether the circuit court erred in dismissing the counts pertaining to the deputies, we must determine whether the amended complaint alleged sufficient facts to establish malice. Such a determination is a question of law. *Shoemaker v. Smith,* 353 Md. 143, 164, 725 A.2d 549 (1999). We pause to note that it is clear that Baltimore City deputy sheriffs are State personnel. Md.Code (1984, 2002 Repl.Vol.) § 12–101(a)(6) of the State Government Article.

We have recently addressed this issue in *Thacker v. City of Hyattsville,* 135 Md.App. 268, 762 A.2d 172 (2000). The dispute in *Thacker* arose when an apartment complex manager telephoned for police assistance in removing an irate tenant from the management office. *Id.* at 278, 762 A.2d 172. Three officers responded to the call. *Id.* at 295, 762 A.2d 172. Thacker, the apartment manager, stated that one of the officers attempted to argue on behalf of the tenant and further stated that the officer made a statement intimating that the argument was a result of racism. *Id.* According to Thacker, the officer, while leaving with the tenant, chastised Thacker stating that he was a bad manager. *Id.* Thacker alleged that he opened the office door and stated " 'If I'm a bad manager, then you're a bad police officer.' " *Id.* at 295–96, 762 A.2d 172. Thacker alleged that the police officer threatened to arrest him if he said anything else. *Thacker,* 135 Md.App. at 296, 762

A.2d 172. According to Thacker, he stated "if I've done something to be arrested for, then arrest me." *Id.* The officer responded by arresting Thacker for disorderly conduct. *Id.*

Thacker further testified that he had previously been pressured by the police to hire off-duty officers as extra protection for the development. *Id.* Thacker stated that he felt this was a form of extortion. *Id.*

The arresting officer testified in his own defense. The officer noted that he had past experience with Thacker and believed he was unfair to his tenants. *Id.* at 297, 762 A.2d 172. The officer gave a divergent account of the events surrounding the arrest. *Thacker,* 135 Md.App. at 297, 762 A.2d 172.

The trial court disposed of Thacker's claim on a motion for summary judgment. The court reasoned that the arresting officers were protected by qualified immunity and that Thacker failed to allege sufficient facts to establish malice. We reversed that decision. In doing so, we noted that questions of malice require a determination of motive and intent and frequently should not be disposed of by summary judgment because they generally present a question for the fact-finder. *Id.* at 300–01, 762 A.2d 172.

Thacker alleged that the arresting officer had made a veiled comment regarding racism, evidence had been presented regarding a possible financial animus, and we noted that the arresting officer had previously formulated some animosity towards Thacker. We held that a rational jury could infer that the arrest was motivated by malice and, consequently, the court erred by disposing of the case through summary judgment.

The Court of Appeals addressed a similar situation in *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000). *Okwa* involved an arrest for disorderly conduct which occurred in an airport. Okwa arrived at the Baltimore–Washington Airport with a paid ticket for a flight to Nigeria. *Id.* at 170, 757 A.2d 118. Upon attempting "check-in" at the airline's counter, he was informed by an airline employee that the ticket was not valid.

*Id.* at 170, 757 A.2d 118. A dispute arose between the airline employee and Okwa which alerted two MTA police officers. *Id.* at 170, 757 A.2d 118. Upon reaching the airline counter, the officers were informed by the airline employee that Okwa was "causing trouble." *Okwa,* 360 Md. at 171, 757 A.2d 118. The parties submitted conflicting stories surrounding the subsequent arrest of Okwa. *Id.* Okwa stated, however, in an affidavit that the officers demanded he leave the airport terminal. *Id.* at 172, 757 A.2d 118. Okwa stated that he tried to explain the situation, but the officers handcuffed him and began escorting him away from the ticket counter at which time the officers were joined by another officer with a search dog. *Id.* Okwa averred that upon exiting the terminal, the officers forced him to the ground, struck him in the head, and twisted his thumbs. *Id.* Okwa stated that he never resisted the officers, nor did he provoke the attack, but concluded that the officers' actions were the result of racial prejudice. *Id.* at 173, 757 A.2d 118.

Okwa was charged with disorderly conduct, resisting arrest, and assault. *Okwa,* 360 Md. at 173, 757 A.2d 118. He was found not guilty of all charges when the district court decided the State failed to meet its burden. *Id.* The court specifically determined that the witnesses for the State presented contradictory testimony. *Id.*

Okwa subsequently filed a complaint alleging, in part, false imprisonment, malicious prosecution, and intentional infliction of emotional distress against the officers, the MTA, and the State. *Id.* at 174, 757 A.2d 118. Defendants filed summary judgment motions which were ultimately granted by the circuit court. *Id.* at 176, 757 A.2d 118. Okwa appealed and the Court of Appeals subsequently granted certiorari.

In reversing the decision of the circuit court, the Court of Appeals noted that the parties presented conflicting stories. *Id.* at 181, 757 A.2d 118. The court noted, however, that a fact finder could believe Okwa's account of the events and could thereby infer that the officers "were motivated by an improper

motive or that they had an affirmative intent to bring harm to Mr. Okwa." *Okwa,* 360 Md. at 182, 757 A.2d 118.

Indeed, several other Maryland cases have presented scenarios in which questions of malice, disposed of in summary judgment or by a motion to dismiss, were remanded so that they could be decided by a fact finder. *See, e.g., Sawyer v. Humphries,* 322 Md. 247, 261–62, 587 A.2d 467 (1991) (holding that a motion to dismiss in favor of a police officer was not appropriate because plaintiffs' allegations that the officer, unprovoked and without cause, had thrown rocks at their car and assaulted and battered them could support a finding of malice); *Nelson v. Kenny,* 121 Md.App. 482, 710 A.2d 345 (1998) (stating that a question of the officer's malice was properly held for the jury where an officer arrested a teacher upon the insistence of a student's mother who expressed racial bias towards the teacher and the officer escorted the teacher from the school and handcuffed the teacher in front of a group of peers); *Town of Port Deposit v. Petetit,* 113 Md.App. 401, 688 A.2d 54, cert. denied *sub nom. Maranto v. Petetit,* 346 Md. 27, 694 A.2d 950 (1997) (affirming the denial of a motion for summary judgment because an off-duty officer's actions in firing shots at appellee's truck, and aiming his gun at appellee while detaining him could give rise to an inference of malice despite the fact that the officer had witnessed appellee's vehicle strike a pedestrian as it was fleeing a group of men throwing rocks); *but see Chinwuba v. Larsen,* 142 Md.App. 327, 790 A.2d 83, cert. granted on other grounds, 369 Md. 179, 798 A.2d 551 (2002) (holding dismissal was appropriate despite appellant's allegation that the Commissioner of the Maryland Insurance Administration's public statement disclosing an investigation of appellant was malicious because the allegation was not supported "by any specific factual detail"); *Williams v. Prince George's County,* 112 Md.App. 526, 685 A.2d 884 (1996) (concluding that a jury could not reasonably infer malice where officers, acting upon the erroneous information that a vehicle was stolen, detained and handcuffed appellant, trained their guns on appellant, but did not "rough [him] up" and apologized for the misunderstanding).

■ Despite these rulings, it is clear that allegations of malice should not be submitted to a jury merely because questions of intent are inherently intertwined within the counts. We stated in *Thacker:*

> [P]laintiffs may not rely upon the mere existence of such an intent, motive, or state of mind issue to defeat summary judgment. Because a defendant's subjective intent is an element of the plaintiff's claim, the plaintiff must point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order to defeat the motion. That evidence must be sufficient to support a reasonable inference of ill will or improper motive.

*Thacker,* 135 Md.App. at 301, 762 A.2d 172.

In the instant case, the facts viewed in the light most favorable to appellant do not give rise to a reasonable inference of malice. The deputies sought to execute an arrest warrant that identified appellant's residence as the subject address. Appellant does not allege that the expired warrant was merely a means to harass him or even that the deputies knew the warrant had expired. Consequently, we cannot infer that the deputies initiated the investigation out of malice. We must, therefore, examine the later conduct of the deputies.

■ Upon appellant's answering the door, the deputies asked if they could enter appellant's home. Appellant denied the request and began to close the door. At this time, the deputies allegedly pushed their way into appellant's home without identifying themselves or stating they possessed a warrant. Absent some other allegation indicating a racial, personal, or other animus for doing so, the evidence is insufficient to conclude that a law enforcement officer with an arrest warrant is acting maliciously when forcibly entering a residence listed on the arrest warrant. Whether the entry was proper or not, malice cannot reasonably be inferred. Similarly, the evidence is not sufficient to conclude that the deputy acted with malice in allegedly jumping on appellant's back to prevent him from making a phone call.

Alternatively, appellant contends that malice may be inferred because the deputies cursed and used profane language directed toward him. Here, appellant generally matched the description of the subject of the arrest warrant with the exception that he was over fifty pounds heavier. The deputies requested that appellant identify himself. When appellant refused, the officers continued to detain appellant and used unpleasant language as a means of obtaining the information sought. A jury could not reasonably infer that the continued detention of appellant was provoked by malice merely because the deputies used profanities and appellant weighed significantly more than the subject of the arrest warrant. Although the alleged use of harsh language by the deputies might reasonably be construed as evidence of anger, such language does not reasonably suggest the type of targeted retaliatory animus that is necessary to establish malice. Moreover, although the fifty pound difference in the weight description of Queen in the warrant application, and the actual weight of the man who opened the door some two and a half years later, might reasonably be viewed as evidence that the officers acted carelessly after seeing Ford, we cannot say that this reasonably suggests malice on their part. Indeed, the deputies would not be properly executing their duties if they were to release appellant from detention prior to ascertaining if appellant was the subject of the arrest warrant.

## II. Negligence

Appellant next contends that the circuit court erred in concluding that the facts viewed in the light most favorable to appellant did not give rise to claims of negligence, negligent trespass, and negligent training and supervision against the State. We do not agree.

As noted above, the MTCA provides in pertinent part:

(a) In general.—

(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action,

in a court of the State, to the extent provided under paragraph (2) of this subsection.

(2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.

(b) Exclusions and limitations.—Immunity is not waived under this section as described under §§ 5–522(a) of the Courts and Judicial Proceedings Article.

■ As noted above, section 5–522(a) of the Courts and Judicial Proceedings Article provides that the State and State agencies will be vicariously liable for torts committed by State employees so long as those torts were committed in the scope of the employees' duty and the torts were not malicious or grossly negligent in nature. Section 5–522(b) of the Courts and Judicial Proceedings Article further provides that State personnel have qualified immunity from mere negligence suits. Indeed, it is clear that allegations of mere negligence are not sufficient to overcome the qualified immunity of State personnel. *See Young v. City of Mount Ranier,* 238 F.3d 567, 579 (4th Cir.2001) (holding that allegations of negligence are insufficient to "overcome Maryland's state employee immunity"); *Cf. Wells v. State,* 100 Md.App. 693, 705, 642 A.2d 879 (1994) (holding that allegations of "individual negligence" do not indicate "wanton, willful, or reckless disregard for human life or the rights of others"). Consequently, we shall proceed with the understanding that the negligence claim is only viable against the State.

■ The standards for establishing a *prima facie* case of negligence have been clearly established. The Court of Appeals stated in *Bobo v. State,* 346 Md. 706, 714, 697 A.2d 1371 (1997), "[t]he basic elements of a negligence claim are: (1) a duty or obligation under which the defendant is to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach." *Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995); *Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 76, 642 A.2d 180 (1994); *Southland Corp. v. Griffith,* 332

Md. 704, 712, 633 A.2d 84 (1993); *Lamb v. Hopkins,* 303 Md. 236, 241, 492 A.2d 1297 (1985).

Appellant first alleges that the deputies negligently trespassed upon his property. This duty was allegedly breached because the deputies failed to display a warrant as requested, entered upon the authority of a faulty warrant, did not identify themselves as police officers, and did not obtain appellant's consent to enter. Appellant alleges that the breach caused him harm.

Appellant next contends that officers owe a duty to use reasonable care to ensure that they do not injure or violate the rights of citizens. Appellant contends that this duty was also breached due to the allegedly violent entrance to appellant's home and the reckless restraint of appellant. Appellant contends that the breach of this duty to the public caused him harm.

Finally, appellant contends that the Sheriff's office negligently trained and supervised the deputies regarding the proper procedures for entering and searching a residence and detaining individuals. Moreover, appellant contends that the Sheriff's Office owes the citizens of Maryland a duty to prevent its agents from abusing their positions of control and power. Appellant asserts that this duty requires the Sheriff's Office to monitor its employees and agents. Appellant alleges that the State had a duty to prevent old warrants from being served either through the sheriffs themselves or through some other State personnel. The fact that an old warrant was served indicated that the State breached its duty and that breach resulted in harm to appellant.

Appellant advances a claim of negligent trespass. In bringing this cause of action, appellant cites no precedent to suggest that such a claim is viable in the State of Maryland. Indeed, we have found only one case in this State that even mentions a claim of negligent trespass. Our opinion in *Herilla v. Baltimore,* 37 Md.App. 481, 484, 378 A.2d 162 (1977), notes that a claim of negligent trespass was advanced despite the fact that the State had not heretofore recognized the cause

of action. In *Herilla* we passed on our opportunity to recognize the claim or explain the concept of trespass. We shall take this opportunity to clarify it now.

■■■■■■ A trespass is an intentional or negligent intrusion upon or to the possessory interest in property of another. *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 15–16, 98 A. 239 (1916); *Timanus v. Leonard,* 121 Md. 583, 588, 89 A. 99 (1913); *Atlantic & George's Creek Consol. Coal Co. v. Maryland Coal Co.,* 62 Md. 135, 143 (1884).[5] In other words, a trespass can be actionable whether the intrusion was done in a negligent or intentional manner. The intentions of the defendant are simply not material. Simply stated a trespass is: 1) a physical act or force against an individual's property; 2) executed without the property owner's consent; which interferes with a possessory interest in that property. Richard J. Gilbert & Paul T. Gilbert, Maryland Tort Law Handbook § 8.2 (3d ed.2000).

In the instant case, appellant raises claims of both negligent and intentional trespass. As noted above, there is no distinction between these claims. For purposes of our analysis, it does not matter whether the deputies acted negligently or intentionally with respect to the claim of trespass. Appellant essentially complains that his constitutional rights were violated. Consequently, we will discuss this issue further under Section III of this opinion.

In addition to his trespass claim, appellant contends that the State was negligent in failing to prevent an old warrant from being served and, therefore, the deputies breached a duty of care owed to the general public. Both of these claims fail to establish a duty owed by the State to appellant. This issue

---

**5.** A trespass can also be an intentional or negligent intrusion upon or to the person. "Assault and battery, false imprisonment, and malicious prosecution ... are all trespasses. Usually, however, one thinks of a trespass as occurring to or upon property, be it real or personal." Richard J. Gilbert & Paul T. Gilbert, Maryland Tort Law Handbook § 8.0 (3d ed.2000).

was addressed by the Court of Appeals in *Bobo v. State,
supra.*

In *Bobo*, the petitioner was arrested on a bench warrant
that had already been served upon him. *Bobo*, 346 Md. at 708,
697 A.2d 1371. The petitioner subsequently brought suit
under the MTCA against employees of the Office of the Clerk
of the District Court of Maryland for damages arising from his
wrongful arrest and detention. *Id.* at 709, 697 A.2d 1371.
Specifically, the petitioner alleged that the Clerk's Office had a
duty to prepare and maintain paperwork to recall the bench
warrant once it had been served. *Id.* The trial court dis-
missed the case for failure to state a cause of action in
negligence because the Clerk owed no duty to the petitioner.
*Id.* at 708, 715, 697 A.2d 1371. In affirming the circuit court's
dismissal, the Court of Appeals noted that the petitioner had
failed to establish a special relationship between himself and
the Clerk's Office that would give rise to a duty to act. The
Court stated:

> Such a relationship may be established in a number of ways:
> (1) by statute or rule, *McCray v. Maryland,* 456 F.2d 1 (4th
> Cir.1972); (2) by contractual or other private relationship,
> *Rosenblatt* [*v. Exxon Co., U.S.A.,* 335 Md. 58, 642 A.2d 180
> (1994) ]; or (3) indirectly or impliedly by virtue of the
> relationship between the tortfeasor and the third party,
> *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md.
> 135, 642 A.2d 219 (1994).

*Id.* at 715, 697 A.2d 1371.

The Court noted that the petitioner had failed to establish
any such relationship. Although the Court agreed that the
Clerk's Office had recalled warrants, the petitioner "failed to
identify the source from which such a duty arose." *Bobo*, 346
Md. at 715, 697 A.2d 1371. The Court concluded:

> [A]lthough Bobo baldly asserts that the court clerks breach-
> ed the tasks set forth as part of their contracts of employ-
> ment, he does not attach a copy of the alleged contract or
> otherwise identify the tasks contractually required of a
> court clerk. His failure, therefore, to plead properly a

cause of action and, in particular, a duty undermines his alternate theories of liability.

*Id.*

The Court consequently held that the matter was properly disposed of by a grant of a motion to dismiss because the petitioner failed to state a claim upon which relief could be granted. *Id.* at 716, 697 A.2d 1371.

We further note that Maryland precedent clearly establishes that police officers generally owe a duty to the public and not individual citizens. The Court of Appeals in *Ashburn v. Anne Arundel Co.*, 306 Md. 617, 628, 510 A.2d 1078 (1986), stated:

We recognize the general rule, as do most courts, that absent a "special relationship" between police and victim, liability for failure to protect an individual citizen against injury caused by another citizen does not lie against police officers. Rather, the "duty" owed by the police by virtue of their positions as officers is a duty to protect the public, and the breach of that duty is most properly actionable by the public in the form of criminal prosecution or administrative disposition.

In the instant case, appellant has wholly failed to establish why the State or the deputies owe a specific duty to him as an individual. Appellant makes bald allegations that the State and/or the deputies were negligent, but appellant has never alleged any special relationship that would establish that a duty was owed to him. Moreover, had appellant properly established that the deputies breached a duty to protect the public, it is apparent that such a breach would not sustain a negligence action against the officers or against the State for vicarious liability or negligent training or supervision. Instead, appellant should seek an administrative remedy. *See Ashburn*, 306 Md. at 628, 510 A.2d 1078.

## III. Constitutional Rights

Appellant contends that the circuit court erred in determining that the facts viewed in the light most favorable to

appellant did not give rise to a violation of Articles 24 and 26 of the Maryland Declaration of Rights. We agree.

 We note, as an initial matter, that appellant has named the three deputies and the State of Maryland as defendants for violations of his constitutional rights. This affords us an opportunity to address the confusion regarding application of the MTCA. The MTCA provides that State personnel have qualified immunity against torts that are not executed in a malicious or grossly negligent manner. Indeed, as noted above, Section 12–104(a)(1) of the State Government Article, the MTCA, provides, "the immunity of the State and of its units is waived as to a tort action . . . ." Of note, the waiver of immunity does not carve out any exception for State constitutional torts. *See Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002). The waiver is a general waiver for liability regarding all tort actions. We have previously said:

> The Maryland Tort Claims Act ("MTCA") was enacted in 1982 . . . . At common law, the State and, in certain instances, public officials were immune from non-constitutional torts. Upon the enactment of the MTCA, the State waived immunity from torts committed by "State personnel," as defined in the statute, acting within the scope of employment, and the employee was granted immunity. Md.Code Ann., State Gov't Art. §§ 12–101 to 12–109 (previously CJ 5–401 to 5–408); CJ § 5–399.2(b). An exception to the above exists if the individual acts with "malice or gross negligence." CJ § 5–399.2(a). The MTCA makes no distinction between intentional, constitutional, or other torts and does not define "malice."

*Thomas v. City of Annapolis,* 113 Md.App. 440, 450 n. 3, 688 A.2d 448 (1997)(J. Eyler).

Consequently, we must treat these constitutional torts as any other tort action.

 We note that this position is supported by the Court of Appeals' decision in *Ritchie v. Donnelly,* 324 Md. 344, 597 A.2d 432 (1991). The *Ritchie* Court addressed the effects of

the MTCA on common law immunities. The Court noted that, at common law, a State official who violated an individual's constitutional right would be held personally liable while the State would enjoy sovereign immunity from suit.[6] *Id.* at 373–74, 597 A.2d 432; *See Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002). The Court, however, explained that through MTCA, the General Assembly has, under limited circumstances, substituted State liability for an individual employee's liability for State constitutional torts. *Id.* at 374 n. 14, 597 A.2d 432; *See Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002). Section 5–522 provides that these circumstances are limited to instances in which a State employee has committed a tort while acting in a non-malicious or grossly negligent manner and within the scope of his or her duties. Consequently, the MTCA permits suit against the State for a negligent violation of the State Constitution by State personnel, but State personnel shall be immune from such suits.

Despite the *Ritchie* Court's clarification of the scope of the MTCA, the Court ultimately held that the defendant, the Howard County Sheriff, was not entitled to statutory immunity. *Id.* at 374 n. 14, 597 A.2d 432. This holding was based solely on the fact that the plaintiff had made sufficient allegations of malice that would have caused the sheriff's actions to fall outside of the scope of the qualified immunity provisions set forth in Section 5–522(b). *Id.; See Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002). The Court, however, concluded that, on remand, if the plaintiff failed to prove malice, the

---

**6.** The Court's discussion of the common law centers on *Clea v. City of Baltimore,* 312 Md. 662, 541 A.2d 1303 (1988), which stands for the principle that State officers have no common law governmental immunity against constitutional torts. Although it is apparent that *Clea* was decided after the 1985 amendments to the MTCA, the events in *Clea* occurred prior to these enactments and thus the Court had to rely on the common law. Notably, the Court in *Clea* recognized that immunity for State officials had been "broadened considerably" by the 1985 amendments which included the first adoption of a qualified immunity provision for State personnel. *Clea,* 312 Md. at 671 n. 6, 541 A.2d 1303; 1985 Md. Law ch. 538 § 2 (effective July 1, 1985).

circuit court would have to determine whether qualified immunity applied. *Id.* at 375 n. 14, 597 A.2d 432. Clearly, the Court would not have had to instruct the circuit court to make a qualified immunity determination absent a malice finding if no immunity existed for State constitutional torts. *See Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002).

The Court's subsequent opinion in *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000), has been read to suggest that qualified immunity does not apply to State constitutional torts. *See, e.g. Tavakoli–Nouri v. State,* 139 Md.App. 716, 734, 779 A.2d 992 (2001) (suggesting *Okwa* proposed that "a claim under Article 24 against a state public official is not subject to a qualified immunity defense"); *Samuels v. Tschechtelin,* 135 Md.App. 483, 522 & n. 10, 763 A.2d 209 (2000)(citing *Okwa* for the proposition that "State officials are not entitled to qualified immunity in a suit under" Article 24); *Cf. Lee v. Cline,* 149 Md.App. 38, 814 A.2d 86 (2002)(noting the confusion). If these cases stand for the proposition that qualified immunity does not apply to State constitutional torts, then neither case offers a clear explanation of how this statement in *Okwa* is consistent with the language of the MTCA. The oft cited language, "[a] state public official alleged to have violated Article 24, or any article of the Maryland Declaration of Rights, is not entitled to qualified immunity," apparently is nothing more than a discussion of common law immunities set forth in *Ritchie and Clea. See Okwa,* 360 Md. at 201, 757 A.2d 118. Indeed, the paragraph begins by noting, "a common law action for damages lies when an individual is deprived of his or her liberty in violation of the Maryland Constitution." *Id.* At no point in the paragraph does the Court mention the MTCA.

Of note, the MTCA merely requires that an individual be characterized as state personnel to gain qualified immunity. Clearly, one may infer that a discussion referring to "public officials," "public employees," "discretionary acts," or "ministerial acts" are limited to the common law or the Local Government Torts Claim Act. When applying the MTCA, any

discussion of these subjects appears to be of no consequence to the result. Indeed, under the MTCA, an examination of an individual's immunity is limited to whether that individual falls within the category of "State personnel." Md.Code (1975, 1999 Repl.Vol.), § 12–105 of the State Government Article.

Moreover, *Okwa* was limited to a discussion of whether the plaintiff raised a material factual dispute regarding malice that would allow the matter to survive summary judgment. *See Lee v. Cline*, 149 Md.App. 38, 814 A.2d 86 (2002). The posture of the case made any discussion of the scope of Section 5–522 unnecessary. Nonetheless, it is clear, sufficient allegations of malice will trump a qualified immunity defense. Thus, we may conclude that the language cited in *Okwa* was mere dictum. *See Lee v. Cline*, 149 Md.App. 38, 814 A.2d 86 (2002).

Consequently, we shall analyze appellant's claim with the understanding that it applies only to the State's liability under the MTCA.

> Article 24 of the Maryland Declaration of Rights provides:
> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Maryland "has recognized that a common law action for damages lies when an individual is deprived of his or her liberty in violation of the Maryland Constitution." *Okwa*, 360 Md. at 201, 757 A.2d 118. The Court of Appeals has previously noted that an arrest without legal authority constitutes a violation of Article 24. *Okwa*, 360 Md. at 202, 757 A.2d 118; *Clea*, 312 Md. at 684–85, 541 A.2d 1303.

> Article 26 of the Maryland Declaration of Rights provides:
> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, with-

out naming or describing the place, or the person in special, are illegal, and ought not to be granted.

"We have stated that Art. 26 is considered *in pari materia* with the Fourth Amendment, such that we accord great respect and deference to the decisions of the United States Supreme Court in interpreting the federal amendment." *Carter v. State*, 367 Md. 447, 458, 788 A.2d 646 (2002) (citing *Richardson v. McGriff*, 361 Md. 437, 452–53, 762 A.2d 48 (2000); *Little v. State*, 300 Md. 485, 493, n. 3, 479 A.2d 903 (1984)). The Court of Appeals' decision in *Okwa* also determined that excessive force claims should be analyzed under Fourth Amendment precedent. *Okwa*, 360 Md. at 204, 757 A.2d 118.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

We note, the Fourth Amendment prohibits only those searches and seizures found to be unreasonable under the circumstances. *See Carter*, 367 Md. at 458, 788 A.2d 646 (citing *Gadson v. State*, 341 Md. 1, 9, 668 A.2d 22 (1995), *cert. denied*, 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *Little v. State*, 300 Md. 485, 493, 479 A.2d 903 (1984); see also *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). The Supreme Court, according to the plain language of the Fourth Amendment, has established a "reasonableness" test for alleged violations. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under this test, the court must determine whether the actions of the law enforcement officers are "objectively reasonable" under the circumstances. *Id.* at 397, 109 S.Ct. 1865. The Court said:

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight .... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. 1865.

■ As noted above, appellant has advanced two trespass of property claims alleging that the deputies entered his home pursuant to an improper warrant. Generally, at common law, violations of a constitutional right were viewed as trespasses giving rise to trespass actions. *Widgeon v. Eastern Shore Hospital Center,* 300 Md. 520, 526, 479 A.2d 921 (1984). A common law trespass action is still an available alternative for claims under the Maryland Constitution. *Id.* at 528, 479 A.2d 921 (citing *Meisinger v. State,* 155 Md. 195, 199, 207, 141 A. 536 (1928)). Consequently, we shall analyze the common law trespass claim along with the constitutional claims.

In the case at bar, appellant claims to have suffered a violation of his constitutional rights because the deputies improperly trespassed upon his property. Indeed, this allegation may be based upon the failure of the deputies to announce themselves or obtain a proper warrant. These have been viewed as essential rights under the Fourth Amendment of the Federal Constitution. *Wynn v. State,* 117 Md.App. 133, 153–161, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998) (summarizing Supreme Court precedent). Appellant also suggests that he was assaulted and battered. These claims essentially suggest that the deputies used excessive force in gaining entry to the premises and in detaining appellant.

■ Generally, under the Fourth Amendment, police officers in the possession of an arrest warrant founded on probable cause possess the limited authority to enter a suspect's residence when the officers reasonably believe the suspect is within the residence. *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Moreover, the Court of

Appeals in *Ashton v. Brown*, 339 Md. 70, 120, 660 A.2d 447 (1995), has stated:

> An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper. Thus ..., legal justification to arrest may depend, in part, upon the arresting officer's good faith and reasonable belief in his authority to arrest.

We hold that the officers' entry into appellant's home did not constitute a trespass. Moreover, the police did not use excessive force to effect the entry or to restrain appellant. Consistent with the dictates of Ashton, the police were justified in relying upon the facially valid warrant to enter appellant's home. The force used to push open the door was not excessive. There was no physical damage to the door and appellant was not injured when the officers barged into the building. Once inside the residence, the officers used reasonable force to wrestle the appellant to the sofa, when appellant moved toward the back of the house as if he might be attempting to flee.

Although the evidence neither supports a trespass to land nor the use of excessive force, the Fourth Amendment has further requirements that must be met in order to sustain the constitutionality of entrance into a dwelling. Generally, "a peace officer seeking to arrest an individual who is in a house, either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter ...." *Henson v. State*, 236 Md. 518, 521–22, 204 A.2d 516 (1964). "The purpose of the knock and announce rule is to prevent violence and physical injury to the police and occupants and to protect an occupant's privacy expectation against the unauthorized entry of unknown persons." *Wynn*, 117 Md.App. at 162, 699 A.2d 512 (1997). Several exceptions to the "knock and announce" requirement have been established based on situations in which an announcement would frustrate an arrest, threaten

the safety of the officers, or provide a suspect the opportunity to destroy evidence. *Henson,* 236 Md. at 522, 204 A.2d 516.

In the case at bar, the deputies were serving a bench warrant for one identified as Queen for failure to pay child support. In acting to serve the warrant, there has been no indication that the deputies reasonably believed Queen posed a danger to them. Similarly, there is no indication that the officers were concerned that the arrest would, in some way, be frustrated had they announced their presence. Thus, if the deputies failed to follow these requirements, appellant's constitutional rights under the Maryland Constitution were violated. A finder of fact must therefore make a determination as to whether the "knock and announce" requirements were satisfied.

In summary, the trespass claim as advanced by appellant in his amended complaint was limited to allegations that appellee trespassed on appellant's *property.* Consequently, the claim is not analogous to a constitutional claim alleging that the knock and announce requirements were not met. It is clear that the deputies were justified in relying on the facially valid warrant to enter appellant's property. *Ashton v. Brown,* 339 Md. at 120, 660 A.2d 447. Thus, the trespass claim must fail.

Finally, as we have suggested above, it is evident that the deputies acted in a reasonable manner once inside the residence. Appellant alleges that one of the deputies jumped on his back when he made furtive movement. Such an action was reasonable under the circumstances because the deputy did not know what appellant was reaching for or if appellant intended to flee. Therefore, any claim of excessive force that may be advanced by appellant must fail.

## CONCLUSION

For the reasons articulated above, we determine that the facts viewed in a light most favorable to appellant do not support a finding of malice. We hold that the circuit court did not err in dismissing those counts. We similarly conclude that appellant has failed to establish a claim of negligence against

the State. Appellant's claims based upon theories of trespass to land and excessive force were properly dismissed. We, however, hold that the facts viewed in a light most favorable to appellant support a finding that appellant's State constitutional rights were violated because of the "knock and announce" requirements. Consequently, we conclude that the circuit court erred in dismissing the constitutional claims against the State. Therefore, we shall remand those claims to the circuit court. All claims against the individual deputies were properly dismissed.

**SUMMARY JUDGMENT REVERSED REGARDING THE CONSTITUTIONAL CLAIMS AGAINST THE STATE OF MARYLAND; AFFIRMED AS TO ALL OTHER CLAIMS AGAINST THE STATE AND DEPUTIES. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANT; 50% BY APPELLEE.**